UNITED STATES v. BALTIC MILLS CO.

(District Court, D. Connecticut. September 30, 1902.)

No. 1,350.

1. ALIENS—CONTRACT LABOR LAW — ADVERTISEMENT PROMISING EMPLOYMENT.
   Defendant published in an English newspaper the following advertisement: "Wanted. First-class weavers, on fine combed work, in one of the most beautiful villages in Connecticut, U. S. A. First-class weavers can earn per week 35s. to £2. Families preferred. Reasonable rents in 6-room cottages. * * * None but first-class weavers and respectable people need apply." *Held*, that such advertisement did not "promise employment," within the meaning of the amendment of March 3, 1891, to the alien contract labor law, and would not support an action to recover the penalty imposed by such law for encouraging the immigration of aliens into the United States.

Action to Recover Penalty. On demurrer to complaint.

F. H. Parker, U. S. Atty.

W. A. Briscoe, for defendant.

PLATT, District Judge. This is an action to recover penalties under Act Cong. Feb. 26, 1885, and especially under section 3 of the amendment of March 3, 1891, relating to the importation of alien labor. The first count of the complaint is all that need be quoted to set forth the plaintiff's claim as it now stands on the record. It is as follows:

"First Count.

"(1) That on the 4th day of October, A. D. 1901, the defendant printed and published and caused to be printed and published in a newspaper called the 'Cotton Factory Times,' printed and published in a foreign country, to wit, in the city of Manchester, in England, in the kingdom of Great Britain, an advertisement in the words, figures, letters, and characters following, to wit:

" 'Wanted—first-class Weavers, on fine combed work, in one of the most beautiful villages in Connecticut, U. S. A. First-class weavers can earn per week 35s. to £2. Families preferred. Reasonable rents in 6-room cottages. On line of railroad and electric cars. This is a new mill starting up. None but first-class weavers and respectable people need apply. Baltic Mills Co., H. Lawton Manager, Baltic, Conn., U. S. A.'

"(2) That on or about said 4th day of October, A. D. 1901, one Harold Hargraves, then residing in said foreign country in or near said city of Manchester, read the said advertisement so printed and published in said foreign country by the defendant as aforesaid, and became acquainted with the defendant's promise of employment therein contained.

"(3) That said Harold Hargraves on said date was, and ever since has been, an alien owing allegiance to the king of Great Britain and Ireland.

"(4) That said alien, in consequence of said advertisement containing said promise of employment, thereafter, to wit, in the month of December, A. D. 1901, migrated to and came into the United States, and to the village of Baltic, in the town of Sprague, in said state and district of Connecticut, and since then has performed labor and service for the defendant as a weaver in defendant's cotton mills in said Baltic.

"(5) The coming of said alien to this country in consequence of the defendant's said advertisement so printed and published in said foreign country as aforesaid was and is in violation of the statutes of the United States approved February 26, 1885, and March 3, 1891 (1 Supp. Rev. St. 479, 934, respectively), and the acts in amendment thereof.

"(6) That the said defendant knowingly, and in violation of the statutes aforesaid, assisted and encouraged the said alien to migrate to this country,

in violation of said statutes, by the promise of employment held out to said alien through said advertisement, so printed and published by said defendant in said foreign country as aforesaid.

"(7) That the defendant, by reason of the facts aforesaid and in pursuance of the provisions of the statutes aforesaid, has forfeited to and become liable to pay to the plaintiff the sum of one thousand dollars as a penalty in respect to said alien.

"(8) The defendant has not paid said penalty."

To this the defendant demurs as follows:

"(1) It does not allege that the defendant prepaid the transportation, or in any way assisted or encouraged the importation or migration, of any alien or aliens, foreigner or foreigners, into the United States, its territories, or the District of Columbia, under contract or agreement, parol or special, express or implied, made previous to the importation or migration of such alien or aliens, foreigner or foreigners, to perform labor or service of any kind in the United States, its territories, or the District of Columbia.

"(2) It does not allege that the defendant assisted or encouraged the importation or migration of any alien by promise of employment contained in any advertisement printed and published in any foreign country.

"(3) It does not allege that the advertisement set forth in paragraph 1 of said complaint contained any promise of employment.

"(4) It does not appear that the advertisement set forth in paragraph 1 of said complaint, and alleged to have been printed and published, or caused to be printed and published, by the defendant, contains any promise of employment, or is in violation of the provisions of said act.

"(5) The advertisement set forth in paragraph 1 of said complaint, and alleged to have been printed and published, or caused to be printed and published, by the defendant, does not contain any promise of employment, and is not in violation of the provisions of said statutes of the United States.

"(6) Said complaint does not allege that said aliens alleged to have migrated were not skilled workmen brought to the United States to perform labor in or upon a new industry not then established in the United States, nor that skilled labor for that purpose could be otherwise obtained."

This opinion shall be confined to an examination of paragraph 4 of the demurrer:

"(4) It does not appear that the advertisement set forth in paragraph 1 of said complaint and alleged to have been printed and published, or caused to be printed and published, by the defendant, contains any promise of employment, or is in violation of the provisions of said act."

The other questions raised by the demurrer are quite technical, and, if sustained, might be obviated by amendment. Let us examine this phase of the . contention with some care. The title to the original act (23 Stat. 332) indicates with admirable brevity and clearness the mischief which was aimed at when the act was passed. It was called by its makers "An act to prohibit the importation and immigration of foreigners and aliens under contract or agreement to perform labor in the United States, its territories and the District of Columbia"; but the law failed in some measure to destroy the alleged mischief which it sought to remedy. In one way and another the federal courts stripped it of much of its anticipated efficacy, and so further efforts were indulged in by our law-making body to lessen the imagined iniquity; but still both the administrative and legislative branches of our government, as well as the public at large, unite in terming it the "Alien Contract Labor Law." Hoping to further facilitate the enforcement of this law, the amendment of March 3, 1891, was passed, and under section 3 of that amendment this action

was brought. Here is an attempt to suppress advertisements in foreign newspapers which promise employment, and it is provided that any alien who comes into this country in consequence of such an advertisement shall be considered to have come under the contract which the original act endeavored to prevent. But it still remains true that the advertisement which encourages him to come must "promise employment," and so, to my mind, the case turns upon the construction which the courts shall give to those words. The statute is highly penal, and should be strictly construed. I do not understand that there is any contention here over that proposition, but, in any event, I should so hold. To give the words the sense which the district attorney suggested would compel us to abandon not alone the strict and narrow construction which any legal definition entails, but, going beyond that, to forsake even a moderately broad view of their meaning, and would bring us directly into the realm of unsubstantial hope and rainbow chasing with a vengeance. It is not conceivable that any sane man of full age, after studying the picture which the advertisement presents, alluring though it may be, could force himself to the point of tearing up his household lares and penates, however humble, and transplanting them, with his family and himself, to the attractive hills of Baltic, notwithstanding, its "6-room cottages" and "electric cars." Any vestige of prudence would not only suggest, but demand, that a letter of inquiry should be sent to "H. Lawton, Manager," and a far more definite promise exacted than any which is even hinted at in the advertisement itself. It is probable that the government has no more definite knowledge than that which it has spread upon the record. If it has not, then, in my opinion, it has no case.

The demurrer is sustained. If the plaintiff can amend its pleadings so as to sustain its case in the light of my views as herein expressed, it may do so within 15 days. If not, let the bill be dismissed.