UNITED STATES v. BALTIC MILLS CO.

(Circuit Court of Appeals, Second Circuit. May 4, 1903.)

No. 162.

1. ALIENS—CONTRACT LABOR LAW—ADVERTISEMENT PROMISING EMPLOYMENT.
    An advertisement, in an English newspaper: "Wanted—First-class weavers, on fine combed work. * * * First-class weavers can earn per week 35s. to £2. * * * Baltic Mills Company, * * * Baltic, Conn., U. S. A."—is within Act March 3, 1891, c. 551, § 3, 26 Stat. 1084 [U. S. Comp. St. 1901, p. 1295], amending the Alien Contract Labor Law (Act Feb. 26, 1885, c. 164) § 1, 23 Stat. 332 [U. S. Comp. St. 1901, p. 1290], and making it penal to "assist or encourage" migration of aliens "by promise of employment through advertisements" published in a foreign country, provided this shall not apply to states advertising the inducements they offer for immigration to such states.
    Coxe, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Connecticut.

For opinion below, see 117 Fed. 959.

F. H. Parker, for the United States.
W. A. Briscoe, for defendant in error.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

WALLACE, Circuit Judge. This is a writ of error by the plaintiff in the court below to review a judgment for the defendant upon a demurrer to the complaint.

The action was brought to recover penalties incurred, as is alleged, under section 3 of the act of Congress of March 3, 1891, entitled "An act in amendment of the various acts relative to immigration and the importation of aliens under contract or agreement to perform labor." 26 Stat. 1084, c. 551 [U. S. Comp. St. 1901, p. 1295]. Section 3 is an amendment of the first section of the act known as the "Alien Contract Labor Law," passed February 26, 1885. 23 Stat. 332, c. 164 [U. S. Comp. St. 1901, p. 1290]. That section enacted as follows:

"That after the passage of this act it shall be unlawful for any person, company, partnership, or corporation, in any manner whatsoever, to prepay the transportation, or in any way assist or encourage the importation or migration of any alien or aliens, any foreigner or foreigners, into the United States, its territories, or the District of Columbia under contract or agreement, parol or special, express or implied, made previous to the importation

¶ 1. Importation of contract labor, see note to Railroad Co. v. Wilson, 1 C. C. A. 52.

or migration of such alien or aliens, foreigner or foreigners, to perform labor or service of any kind in the United States, its territories or the District of Columbia."

By section 3 of the amendatory act (Act March 3, 1891, c. 551, 26 Stat. 1084 [U. S. Comp. St. 1901, p. 1295], it is provided as follows:

"That it shall be deemed a violation of said act of February 26, 1885, to assist or encourage the importation or migration of any alien by promise of employment through advertisements printed and published in any foreign country; and any alien coming to this country in consequence of such an advertisement shall be treated as coming under a contract as contemplated by such act; and the penalties by such act imposed shall be applicable in such a case:· provided, this section shall not apply to states and immigration bureaus of states advertising the inducements they offer for immigration to such states."

The complaint alleges that the defendant, a Connecticut corporation, published October 4, 1901, in a newspaper called the "Cotton Factory Times," at the city of Manchester, England, the following advertisement:

"Wanted—First-class weavers on fine comb work, in one of the most beautiful villages in Connecticut, U. S. A. First-class weavers can earn per week 35s. to £2. Families preferred. Reasonable rents in six-room cottages on line of railroad and electric cars. This is a new mill starting up. None but first-class weavers and respectable people need apply. Baltic Mills Company, H. Lawton, Manager, Baltic, Conn., U. S. A."

The complaint also alleges that on or about October 4, 1901, one Hargrave, an alien owing allegiance to the king of Great Britain and Ireland, and then residing near said city of Manchester, read the said advertisement, and in consequence thereof migrated to and came into the United States and to the village of Baltic, and that the said defendant knowingly and in violation of the statutes aforesaid assisted and encouraged the said alien to migrate to this country in violation of said statute by the promise of employment held out to said alien through said advertisement, so printed and published by said defendant in said foreign country. The court below sustained the demurrer upon the ground that the complaint failed to show that the defendant had encouraged the migration of the alien by promise of employment, being of opinion that the statute, being penal, should be strictly construed, and the advertisement did not contain any definite promise, or a promise in any legal sense.

In legal definition a promise is a declaration, verbal or written, made by one person to another, for a good or valuable consideration, by which the promisor binds himself to do or forbear some act, and gives to the promisee a legal right to demand and enforce fulfillment. Newcomb v. Clark, 1 Denio, 226–228. In a general sense, it is a declaration "which binds the person who makes it, either in honor, conscience, or law, to do or forbear a certain act specified." One definition, according to Worcester, is "assurance of a benefit." The meaning of the term as used in the statute is not necessarily its meaning in legal definition. The rule that penal statutes are to be strictly construed is not violated by allowing their words to have full meaning, or even the more extended of two meanings, where such construction best harmonizes with the context. United States v. Hart-

well, 6 Wall. 385, 18 L. Ed. 830.   In the language of Chief Justice Marshall:

"Though penal laws are to be construed strictly, they are not to be construed so strictly as to defeat the obvious intention of the Legislature. This maxim is not to be so applied as to narrow the words of the statute to the exclusion of cases which these words in their ordinary acceptation, or in the sense in which the Legislature has obviously used them, would comprehend." United States v. Wiltberger, 5 Wheat. 76, 5 L. Ed. 37.

The advertisement in question was an assurance to first-class weavers that they could find employment at their trade with the defendant which would yield a stated return varying between specified rates; but it was not equivalent to a contract to employ such as might apply, or to employ them for any definite period.   A proposal addressed to some person in particular becomes a contract, if its terms are accepted by the promisee before it is withdrawn; but one addressed to the world at large does not become a contract until some one of those to whom it is addressed has performed its conditions. The employé whose services have been accepted by the employer pursuant to such a proposal may rely upon the terms of the proposal as to wages and other conditions expressed; but the promisee has no right of action for breach of the contract, express or implied, from the refusal of the promisor to employ him.   The newspapers teem with advertisements for employés of all kinds, many of which specify the wages and other conditions of the service expected; but it has never been supposed that the person who offers himself for the employment, by the inducement of the advertisement, and is refused, can maintain suit for a breach of contract.   The privilege of the advertiser to exercise his personal judgment as to the character and habits, and other qualifications generally, of the applicant, is an implied condition of his proposal, and no contract arises consequently until the applicant has been accepted.

It was the obvious purpose of the amendatory act to remedy the defects in the pre-existing statute in two particulars.   Under the pre-existing statute the penalty did not accrue unless (1) the alien had previous to his migration entered into a contract to perform labor or service in this country, and (2) had actually migrated here, and (3) the defendant had, by prepayment of transportation or otherwise, encouraged or assisted his migration, knowing that such a contract had been entered into.   In United States v. Craig (C. C.) 28 Fed. 799, the court said:

"So far from the contract being the sole cause of action, primarily it is not necessary that the defendant should have been a party to it at all."

And again:

"The penalty is attached, not to the making of the illegal contract, but to the encouraging and assisting the migration of the alien to perform labor, knowing that such illegal contract or agreement has been made."

The statute was capable of being read so that the penalty would not accrue from the making of a previous contract with the alien by the defendant himself, if the alien's migration had not been other-

wise encouraged by the defendant, as by the prepayment of his transportation or some analogous act, though it was capable of a reading by which the contract, if made with the defendant, might be deemed a sufficient assistance or encouragement.

The amendment was intended to dispense with the necessity of proving that there had been a contract with the alien "made previous to the importation or migration," or that there had been any other assistance or encouragement to his migration than a promise of employment. It adds to the acts penalized by the former statute another, and makes it penal to "assist or encourage" the migration "by promise of employment through advertisement." The word "promise" is used in the sense in which advertisements commonly promise employment to applicants. Under the former statute there could be no antecedent contract by an advertisement, however explicit the terms of the promise might be, because the promise could not, until the alien entered upon its performance, become a contract. Under the present no antecedent contract is necessary, and it would seem to suffice if there is a promise of employment sufficiently explicit to induce those to whom it is addressed to apply to some particular employer in the expectation of receiving employment of a specified kind at specified compensation. The proviso indicates that Congress did not use the word "promise" in its strict legal meaning, but rather in the sense of an assurance or inducement to encourage aliens to migrate. The proviso withdraws from the operation of the section the "inducements advertised by states and immigration bureaus of states offered for immigration to such states." These advertisements do not ordinarily contain promises of employment in the nature of specific proposals, but contain assurances of opportunity for employment and of the remuneration that may be expected. The office of a proviso is to carve an exemption out of the enacting clause, to except something which would otherwise have been within it (Wayman v. Southard, 10 Wheat. 30, 6 L. Ed. 253; Minis v. United States, 15 Pet. 423, 10 L. Ed. 791); and this proviso denotes the intention of Congress to exempt states and their immigration bureaus from a liability which might otherwise be incurred by the advertisement of their inducements to immigrants. We are of opinion that any assurance of probable employment, definite as to the kind, the place, and the rate of wages, is a promise of employment within the meaning of the statute. If this conclusion is correct, the advertisement published by the defendant was within the interdicted class. Obviously both the defendant and the alien regarded the advertisement as holding out a promise of employment specific enough to induce the alien to migrate and accomplish the purpose intended by the defendant.

The question which was presented by the demurrer is not altogether free from doubt, especially in view of the very strict construction which the courts have placed upon the alien contract labor law; but we are constrained to the conclusion that the complaint was sufficient.

The judgment is reversed, with instructions to the court below to order judgment for the plaintiff, but without prejudice to an application by the defendant for leave to answer.

COXE, Circuit Judge. I think the decision of the District Judge was right and should be affirmed. Two propositions are, in my judgment, established beyond controversy: First, in order to bring the defendant in error within the statute, there must be proof that it assisted or encouraged the migration of Hargraves "by promise of employment," and, second, the advertisement in question contains no such promise.

There is no ambiguity in the statute. Its meaning is plain. There is, therefore, no necessity for resorting to extrinsic considerations or contemporaneous debate to arrive at its proper construction. The plaintiff in error seeks an interpretation which eliminates the words "by promise of employment" altogether, or he seeks to accomplish the same result by making the word "promise" synonymous with "expectation" or "hope." The word has never been so construed when used in legal documents or statutes. It means an "engagement," "undertaking," "assurance," "obligation" or "agreement." If not actually a contract it implies a declaration which becomes such when accepted by the person to whom it is addressed. Had the advertisement in question contained such a promise the migration of Hargraves pursuant thereto would probably be deemed an acceptance. The advertisement contains no promise of any kind. It is hardly more than a statement of facts and conditions existing at the Baltic Mills. The newspaper press teems with similar "want" advertisements. It cannot be seriously contended that one who advertises for a coachman or a cook has made a "promise of employment." On the contrary, he is at liberty to reject, arbitrarily, all applicants.

It was admitted at the argument by the learned District Attorney that the Baltic Mills Company was under no legal obligation to employ emigrants coming here from Manchester. They could have turned all alien applicants from their mills without a word of explanation, and there would have been no redress.

The District Judge has carefully and ably discussed the question involved and in his conclusion I fully concur.