CLARKE v. ATLANTIC STEVEDORING CO.

(Circuit Court, E. D. New York. June 27, 1908.)

1. MASTER AND SERVANT—CONTRACT OF HIRING—ACTION FOR BREACH.

A complaint alleged that plaintiff received a letter from defendant's superintendent, stating that "I have work immediately for 200 colored longshoremen, and can guarantee the above number continuous work, providing they are good men," etc.; that, pursuant to said letter, plaintiff and 96 other colored men, who had assigned their claims to him, went to work for defendant, and were employed and paid by it to a certain time, when they were discharged, and their places filled by white men. *Held*, that such complaint did not state a cause of action for breach of contract; the letter being no more than an advertisement or invitation, the terms of any contracts being matters to be settled between the parties when the hirings were made.

2. SAME—TERM OF EMPLOYMENT.

A contract of hiring which does not state the term, in the absence of a statute or custom fixing the term, is terminable at will.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 19.]

On Demurrer to Complaint.

Wilford H. Smith, for plaintiff.

Hunt, Hill & Betts (George Whitefield Betts, Jr., of counsel), for defendant.

CHATFIELD, District Judge. The plaintiff in this action is the assignee of 96 colored longshoremen, who went to work at the suggestion and apparently under the direction of the plaintiff, who had received a letter from one Charles M. Tiffany, superintendent of the defendant, which is as follows:

"New York, May 3rd, 1907.

"Mr. William Clarke, New York City—Dear Sir: I have work immediately for 200 colored longshoremen, and can guarantee the above number continuous

work, providing they are good men. This Company pays the usual rate of wages, namely, 30¢ per hr. for day and 45¢ per hr. at night. We propose to keep colored men at work as long as they fulfill their part of the program. Attached letter-head will show you the work we do.

"Yours truly,                                          Chas. M. Tiffany, Supt."

The plaintiff and his 96 assignors went to work for the defendant, and were employed and paid up to the 6th day of July, 1907, when they were discharged and their places filled by white longshoremen. The plaintiff on his behalf, and because of the transactions with each of his assignors, has claimed $1,000 damages each for breach of what he alleges was a contract to furnish continuous employment at a reasonable rate of wages. The complaint alleges that the defendant has failed to give employment to each of the plaintiff's assignors from the time of the breach until the present date.

The defendant has demurred, and claims (1) that the letter was not an offer by the acceptance of which the defendant would be bound to employ any particular person; (2) that, if a contract existed, its duration was indefinite, and in fact amounted to but an employment at will; (3) that the inducement was offered by the superintendent of the defendant, and that the defendant was an undisclosed principal; (4) that the advertisement called for 200 men and that but 96 appear to have gone to work, thus showing a lack of compliance on the part of the libelant. It is unnecessary to discuss these last two grounds. It is impossible upon demurrer to determine whether 96 or 200 men answered the advertisement; the record merely showing that 96 of these men have assigned their claims to the libelant. Nor does the record show the authority of the person who signed the letter. The letter is written upon the paper of the defendant, and the complaint states that the plaintiff went into the service of the defendant, and that the contract signed by the superintendent was made with the defendant.

It can hardly be determined upon the face of this pleading that a prima facie contract with the defendant is not alleged, if the matter was in any sense a contract between the plaintiff's assignors and any person or corporation whatever. We must, therefore, consider the first two grounds of the demurrer, and these would seem to be well founded. The letter recited is at most an advertisement or inducement to enlist the interest and offer of services by the plaintiff. It is manifest that the plaintiff as an individual could not do the work of 200 men, and the letter certainly contemplated the presentation to the defendant either of an offer to furnish longshoremen, or of longshoremen to be put to work, and all arrangements are left in abeyance, and by the terms of the letter would seem to be matters for adjustment at the time of hiring. The statement of a need is not the offer of a position, unless the terms are definite and the offer is so worded as to indicate intent to make a contract by acceptance. United States v. Baltic Mills Co., 124 Fed. 38, 59 C. C. A. 558.

As to the other objection—that, if an arrangement was made, it was terminable at will—the question would seem to be disposed of by the previous discussion. But, in so far as the plaintiff may have shown by his complaint that he and his assignors went to work under

a contract of which the letter in question is a written memorandum (assuming for the purpose of this argument that the complaint has been so worded that a contract of this nature might be proven under it, even though on its face it appears to be an allegation of an offer and acceptance), nevertheless the demurrer should be sustained. A contract of hiring, indefinite with respect to the term for which the contract shall run, in the absence of allegations that the term of the contract is fixed by statute or custom, is at most a contract terminable at will. Many cases in the state court supporting this proposition could be cited, and a number of these are referred to, with a quotation from Wood on Master and Servant, p. 272, in the case of The Pokanoket, 156 Fed. 241, 84 C. C. A. 49, which shows the existence of the same rule in the federal courts.

The allegation of the complaint that the colored men were replaced by white, and the date of their discharge showing that the discharges all took place at one time, indicate a complete departure from the intent or mental attitude of the defendant's superintendent, as evidenced by the statement that "we propose to keep colored men at work as long as they fulfill their part of the program." This change of purpose may have caused hardship to a number of innocent workmen, but the matter must be determined according to the parties' legal rights, and not from the standpoint of sympathy or approval of the economic questions involved, and it seems to the court that the plaintiff has shown no agreement with the defendant by which it bound itself to continue the plan of employing colored workmen longer than it might see fit so to do; nor is any contract on the part of the defendant set forth under which the defendant agreed not to change its mind.

The demurrer must be sustained.