UNITED STATES v. DWIGHT MFG. CO.

(District Court, D. Massachusetts. November 19, 1913.)

No. 254.

1. ALIENS (§ 58*)—IMPORTATION—"CONTRACT LABORER"—"OFFER OF EMPLOYMENT"—ACTION FOR PENALTY.

Immigration Act Feb. 20, 1907, c. 1134, § 2, 34 Stat. 900 (U. S. Comp. St. Supp. 1911, p. 503), provides that certain classes of aliens shall be excluded, one class being "contract laborers," who are defined to be persons who have been induced or solicited to migrate to the United States by offers or promise of employment or in consequence of agreements to perform labor in the United States of any kind, skilled or unskilled. *Held*, that where a declaration to recover penalties for importation of "contract laborers" alleged that defendant made to the alien named, in a foreign country specified, a certain "offer of employment," and that if the alien would migrate defendant would employ and pay him to perform for defendant certain manual labor, it sufficiently alleged an "offer of employment" so as to bring the laborer within the excluded class of "contract laborers," though the offer was indefinite as to terms and conditions of the employment, the amount of his wages, etc.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 113, 114; Dec. Dig. § 58.*]

2. ALIENS (§ 58*)—IMPORTATION—CONTRACT LABORERS—ACTION FOR PENALTY—DECLARATION.

Where a declaration by the United States to recover penalties imposed by Immigration Act Feb. 20, 1907, c. 1134, §§ 4, 5, 34 Stat. 900 (U. S. Comp. St. Supp. 1911, p. 503), for importing contract laborers, was filed against defendant corporation and alleged that it made the offers of employment to the aliens and prepaid their transportation, the fact that it did not specify whether the offers were made by an officer of the corporation or by some other person, and did not allege whether they had authority, whether the offers were oral or in writing, or their terms, did not render it demurrable.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 113, 114; Dec. Dig. § 58.*]

3. ALIENS (§ 58*)—IMPORTATION—CONTRACT LABORERS—EXEMPTED CLASS.

Where a declaration by the United States to recover penalties for importing contract laborers in violation of Immigration Act Feb. 20, 1907, c. 1134, §§ 4, 5, 34 Stat. 900 (U. S. Comp. St. Supp. 1911, p. 503), alleged generally as to each alien that he was not within the exempted class, but was a contract laborer, it was not demurrable for failure to allege facts showing that the particular aliens were not within the exempted class specified by section 2.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 113, 114; Dec. Dig. § 58.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. ALIENS (§ 58*)—CONTRACT LABORERS—IMPORTATION—PENALTIES—DECLARA-
TION.

Where a declaration by the United States to recover penalties for the importation of contract laborers alleged that the aliens assisted as charged migrated to the United States, it was not demurrable for want of further allegations that they migrated or arrived at those places within the United States referred to in the various alleged offers of employment.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 113, 114; Dec. Dig. § 58.*]

Action by the United States against the Dwight Manufacturing Company to recover penalties under Immigration Act Feb. 20, 1907, c. 1134, §§ 4, 5, 34 Stat. 900 (U. S. Comp. St. Supp. 1911, p. 503). On demurrer to declaration. Overruled.

See, also, 210 Fed. 79, 81.

Asa P. French, U.'S. Atty., of Boston, Mass.
Charles F. Choate, of Boston, Mass., for defendant.

DODGE, Circuit Judge. For the reasons and upon the terms stated in the opinion herein dated March 31, 1913, 210 Fed. 85, the government was allowed to amend for the second time, after a demurrer to its declaration as first amended had meen heard but not decided. To its present amended declaration the defendant again demurred on April 10, 1913, and upon this demurrer there has now been a hearing.

This declaration as filed contains 122 counts, alike in form, and differing only in the names of persons, countries, or places. The questions raised by the demurrer are the same under each count.

As stated in the opinion dated March 31, 1913, the suit is to recover penalties under sections 4 and 5 of the Immigration Act of Feb. 20, 1907, c. 1134, 34 Stat. 900 (U. S. Comp. St. Supp. 1911, p. 503). The question upon each count is whether or not such a violation, by the defendant, of section 4, as incurs the penalty imposed by section 5, is sufficiently alleged.

The violation charged in each count is that the defendant knowingly and unlawfully assisted a certain alien to migrate from a foreign country, specified in the count, to the United States, by knowingly and unlawfully prepaying his transportation to a place specified, within the United States. Each count further alleges that the alien named was an alien contract laborer within the true intent and meaning of the Immigration Act, was an unskilled laborer, and was not a contract laborer exempted under the terms of the last two provisos in section 2 thereof.

Section 2 provides that certain classes of aliens shall be excluded from admission into the United States. One class is to consist of "contract laborers." Contract laborers are then defined, for the purposes of the act, to be persons "who have been induced or solicited to migrate to this country by offers or promises of employment or in consequence of agreements, oral, written or printed, express or implied, to perform labor in this country, of any kind, skilled or unskilled."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The last two provisos of section 2 are:

"(1) That skilled labor may be imported if labor of like kind unemployed cannot be found in this country.

"(2) That the provisions of this law applicable to contract labor shall not be held to exclude professional actors, artists, lecturers, singers, ministers of any religious denomination, professors for colleges or seminaries, persons belonging to any recognized learned profession, or persons employed strictly as personal or domestic servants."

The declaration does more than allege that the aliens whose immigration was assisted as above were "contract laborers" within the meaning of the statute. Each count is more specific upon this point. Each count begins by alleging that the defendant made to the alien named, and in the foreign country specified, "a certain offer of employment." Each count then describes the alleged offer as follows:

"That if said alien would migrate from said * * * to (here naming a place in the United States), said defendant would employ and pay said alien to perform for said defendant at said (place within the United States) certain manual labor, that is to say, to operate and assist in operating divers machines used by the defendant in its mill at said (place within the United States) in the manufacture of cotton fabrics."

Having thus described the alleged offer or promise of employment made to the alien named, each count next alleges that the defendant unlawfully assisted him to migrate by prepaying his passage to a place within the United States; follows this by allegations that, induced by the offer and assisted by the prepayment, he did migrate to the United States; and concludes with allegations that he was not at the time an alien entitled to enter the country, that the defendant well knew the fact to be so, and that it owes the prescribed penalty.

The defendant objects that the aliens named in the counts are not sufficiently alleged to have been contract laborers within the definition given in the act.

[1] The defendant urges, in the first place, that no offer of employment sufficient to make the alien a "contract laborer," even if he was induced or solicited by it to migrate to this country, has been set forth. It will be noticed that the declaration nowhere says that any "promise" of employment was made. The offer described as above in the declaration is claimed to be insufficient for the purpose, because it does not appear therefrom: (a) When or under what terms and conditions the defendant would employ the alien named; nor (b) the sums, if any, the defendant would pay him; nor (c) what the character of the labor referred to was; (d) what the terms of payment were or were to be. It is contended that an "offer" not specific on these points cannot be sufficiently definite and certain to constitute an inducement to migrate, and therefore an "offer of employment" within the meaning of the act.

We are not dealing here with the sufficiency of a published advertisement as a "promise" of employment, within the meaning of section 3 of the Act of March 3, 1891, c. 551, 26 Stat. 1084, U. S. Comp. St. 1901, p. 1295 (section 6 of the present act), as was the case in U. S. v. Baltic Mills (D. C.) 117 Fed. 959, reversed on appeal 124 Fed. 38, 59 C. C. A. 558. There the defendant was accused of assisting or encouraging an alien's migration by publishing an advertisement in Man-

chester, England, which held out to first-class weavers on fine, combed work the prospect of wages ranging in amount between specified limits, to be earned by working for the defendant at Baltic, Conn. It was not there necessary, as it is here, merely to allege facts bringing the alien within the class of "contract laborers" as defined by the act of 1907 in the words above quoted from section 2 thereof. The question was whether or not the advertisement could be called a "promise of employment" such as the defendant was forbidden by law to advertise abroad. The District Court held that it could not; the Court of Appeals, one judge dissenting, held that it could. According to the opinion, "promise" was not to be taken in its strict legal meaning, but in the sense in which advertisements commonly promise employment. It was said:

"We are of opinion that any assurance of proper employment, definite as to the kind, the place, and the rate of wages, is a promise of employment within the meaning of the statute."

According to the dissenting opinion, this made "promise" synonymous with "expectat.. n" or "hope" and was too broad a construction.

The defendant urges that if an advertised "promise" must, at least, be definite as to the kind of employment, the place, and the rate of wages, to be within the act of 1891, no less is essential to make an "offer" sufficient for the purpose of constituting the alien to whom it is made a "contract laborer" under the definition of section 2 of the present act.

An opinion is quoted rendered to the President in 1909 by the then Attorney General (27 Op. A. G. 479) in which it is pointed out·that the provisions of the act of 1907 were passed because the courts had so construed previous acts as to require, in order to prove an alien a "contract laborer," proof that he came in pursuance of a completed contract previously entered into with him, and that Congress, regarding this as a defect, evidently intended to remedy it. It was said:

"The meaning of the words added in the act of 1907 does not require that their effect be given greater force than to cure the defect in the previous law, which it was the manifest purpose of the amendment to remedy; and the statute as thus amended could very properly be construed to prohibit only an offer or promise of employment which is of such definite character that an acceptance thereof would constitute a contract."

But the facts upon which this opinion was rendered did not present a case in which there was or was to be any offer or promise of employment to any of the aliens concerned, and their immigration was to be induced only by representations of the resources of Hawaii and the industrial conditions there existing.

No court appears as yet either to have adopted or disapproved the construction suggested by the above opinion.

The former acts did not make an alien a "contract laborer," and thereby put him into the excluded class, unless he was under or came to this country under a contract. The present act makes him a "contract laborer" or not, according to the moving cause of his coming. Not only an agreement with him to perform labor in this country, but also an offer or promise of employment to perform such labor, are to

make him a "contract laborer," if by such offer or promise he has been induced to migrate, or solicited to migrate; as well as if, in consequence of such agreement, he has been induced or solicited to migrate. A penal statute like this is indeed to be strictly construed, yet the language actually used by Congress must be interpreted according to its fair and obvious meaning. If, as this declaration alleges, the aliens named were in fact induced to migrate by offers no more specific as to terms and conditions, amounts to be paid, the character of the labor, or the terms of payment, than the offers described as above, I do not think the court could properly say that they were not "contract laborers" within the act; nor do I see how the court can properly say that offers made in the terms alleged could not have induced any of them to migrate. This will be a question for the jury, as will also the further question whether or not, if they were so induced, and were therefore "contract laborers," the defendant knowingly assisted their migration as charged after they had thus become "contract laborers." I am unable to hold that the declaration has not sufficiently alleged them to have been contract laborers.

The remaining grounds of demurrer may be more briefly dealt with.

[2] The defendant being a corporation, the allegations that it made the offers to the aliens, or prepaid their transportation, can only mean that these things were done by some person having the defendant's authority. The declaration does not specify whether the offers were made by an officer, by some other person, or by one or more persons, nor that whoever made the offers had authority from the defendant. The same is true regarding the alleged prepayments, and there is no statement of the amounts prepaid.

The declaration does not set forth whether the offers were made orally, or in writing, or what their terms were. It is, however, made sufficiently clear that the penalty claimed is for violating sections 4 and 5 and not for the distinct offense of violating section 6.

If the offers, having been made as alleged, induced the alleged migrations, and if the defendant, chargeable with knowledge of these facts, assisted the migration by prepaying transportation to any amount, or causing it to be prepaid, I am unable to say that the declaration fails to allege an offense under sections 4 and 5 by reason of the above omissions. It may be that the defendant will have the right to require further specifications upon some of the above points before the trial. None of the omissions, however, seem to me of a character to warrant the ruling that the declaration is bad because of them.

[3] The defendant contends that the declaration has not sufficiently negatived the application to any of the aliens named of the last two provisions of section 2. It contends that no facts concerning the alien, from which the court can say that he is not within the exempted classes, have been specifically alleged. As has appeared, however, the declaration states generally as to each alien that he was not within the exempting provisions, and this seems to me sufficient, in connection with the allegations that they were contract laborers.

[4] Lastly, it being alleged that the aliens, assisted as charged, did migrate to the United States, I am unable to say that the declaration is

bad for want of allegations that they migrated or arrived at those places within the United States referred to in the various alleged offers of employment.

I find no sufficient ground for sustaining the demurrer, and it is therefore overruled. But this applies only to the first 97 counts thereof. For reasons stated in another opinion of this date (210 Fed. 85), the order of March 31, 1913, allowing the second amendment, is modified so as to apply only to said 97 counts and not to the 25 remaining counts.