### UNITED STATES v. RIVER SPINNING CO.

(Circuit Court of Appeals, First Circuit. May 8, 1918.)

#### No. 1325.

1. ALIENS ⊛⟞40—IMMIGRATION—CONSTRUCTION OF STATUTE.
   Immigration Act Feb. 20, 1907, c. 1134, § 5, 34 Stat. 900 (Comp. St. 1916, § 4250), imposing penalties for the importation of contract laborers, etc., should be strictly construed.

2. ALIENS ⊛⟞58—IMMIGRATION—CONTRACT LABORERS.
   Under Immigration Act, §§ 4, 5 (Comp. St. 1916, §§ 4248, 4250), imposing a penalty upon any person assisting, encouraging, or soliciting the immi-

⊛⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

gration or importation of contract laborers, an actual migration into or entry into the territory of the United States is necessary to warrant recovery of the penalty, and where the laborers were rejected at the port of entry none can be recovered.

In Error to the District Court of the United States for the District of Rhode Island; Arthur L. Brown, Judge.

Action by the United States against the River Spinning Company to recover a penalty for violation of Immigration Act 1907, §§ 4, 5. A demurrer was sustained to the declaration (243 Fed. 759), and plaintiff brings error. Affirmed.

Harvey A. Baker, U. S. Atty., of Providence, R. I.

Claude R. Branch, of Providence, R. I. (Edwards & Angell, of Providence, R. I., on the brief), for defendant in error.

Before DODGE, BINGHAM, and JOHNSON, Circuit Judges.

DODGE, Circuit Judge. The declaration in this case alleged violations by the defendant company of section 4 of the Immigration Act of 1907 (Act Feb. 20, 1907, c. 1134, 34 Stat. 898 [Comp. St. 1916, § 4248]). It claimed penalties of $1,000 for each violation, according to section 5 of said act (Comp. St. 1916, § 4250). It was held insufficient on demurrer (243 Fed. 759), and of this the plaintiff complains by this writ of error.

Section 4 makes it a misdemeanor in any way to assist or encourage the migration of any contract laborer or laborers into the United States unless they fall within certain classes excepted by provisions in section 2 (Comp. St. 1916, § 4244), not here applicable.

Section 5 imposes a penalty of $1,000 for every violation of the provisions of section 4 "by knowingly assisting, encouraging, or soliciting the migration" of any contract laborer into the United States.

Section 2 defines "contract laborers" for the purposes of the act as meaning:

Persons "who have been induced or solicited to migrate to this country by offers or promises of employment or in consequence of agreements, oral, written, or printed, express or implied to perform labor * * * of any kind, skilled or unskilled."

The declaration alleged offers or promises of employment by the defendant to four alien unskilled laborers in Canada, if they would come from thence to the defendant's factory in Woonsocket, R. I. It further alleged, in substance, that said offers and promises were made willfully and knowingly for the purpose of assisting, encouraging, and soliciting said aliens to migrate into the United States; and that they, pursuant to and acting upon said offers, attempted and tried so to migrate, but were stopped by the United States immigration officers at Newport, Vt., the point of entry. It thus appeared from the declaration that there had been no actual immigration into the United States in the case of any of the aliens mentioned. There were allegations that they were rejected at Newport as alien contract laborers, but there were no express allegations that they were contract laborers at the time the alleged offers and promises were made to them.

The demurrer was sustained, as appears from the opinion below, because the declaration failed to show that any of the said aliens ever actually migrated into or entered into the territory of the United States.

[1] The defendant, as the District Court held, is entitled to the benefit of the rule of strict construction, which rule is no less applicable to the statute under consideration than it was to the Immigration Act of 1903 (March 3, 1903, c. 1012, 32 Stat. 1213), before us in Darnborough v. Benn & Sons, 187 Fed. 580, 583, 109 C. C. A. 270. The declaration in that case alleged, as this does not, completed immigration by the aliens there in question, in pursuance of the alleged offers or solicitations.

[2] Like the Act of 1903, and like the immigration acts which preceded it, the statute under consideration makes it an offense to assist, etc., "the migration" of persons whose entry is forbidden, but not to assist, etc., such persons "to migrate." Under the acts preceding that of 1907 it was uniformly held that unless there had been actual migration the statutory penalty had not been incurred. The decisions are hereinafter referred to.

Section 1 of the Act of 1885 (Act Feb. 26, 1885, c. 164, 23 Stats. 332) provided:

"That from and after the passage of this act it shall be unlawful for any person, company, etc., in any manner whatsoever, to prepay the transportation, or in any way assist or encourage the importation or migration of any alien or aliens, any foreigner or foreigners into the United States, * * *, under contract or agreement, parol or special, express or implied, made previous to the importation or migration of such alien or aliens, foreigner or foreigners, to perform labor or service of any kind in the United States. * * * * "

Section 3 of the same act imposed a penalty of $1,000 for every violation of any of the provisions of section 1—

"by knowingly assisting, encouraging or soliciting the migration or importation of any alien or aliens, foreigner or foreigners, into the United States, * * * to perform labor or service of any kind under contract or agreement, express or implied, parol or special, with such alien or aliens, foreigner or foreigners, previous to becoming residents or citizens of the United States."

The Act of 1891 (Act March 3, 1891, c. 551, 26 Stat. 1084), passed in amendment of the various acts relative to immigration and the importation of aliens under contract or agreement to perform labor, provided in section 3:

That it should be deemed a violation of the Act of 1885 "to assist or encourage the importation or migration of any alien by promise of employment through advertisements printed and published in any foreign country; and any alien coming to this country in consequence of such an advertisement shall be treated as coming under a contract as contemplated by such act; and the penalties by said act imposed shall be applicable in such a case."

It is apparent that the section last referred to is an amendment of sections 1, and 3 of the Act of 1885. It amends section 1 in that it enlarges and defines what may be considered a "contract or agreement" within the meaning of those terms as used in section 1; and it amends section 3 in that it makes the penalties there imposed applicable to the offense as defined by said section 3 of the Act of 1891.

The statute of 1903 (32 Stats. 1213) was in the main, and so far as the matters now being considered are concerned, a revision and re-enactment of the above-quoted provisions of the acts of 1885 and 1891. Sections 4, 5, and 6 are as follows:

"Sec. 4. That it shall be unlawful for any person, company, partnership, or corporation, in any manner whatsoever, to prepay the transportation or in any way to assist or encourage the importation or migration of any alien into the United States, in pursuance of any offer, solicitation, promise, or agreement, parol or special, expressed or implied, made previous to the importation of such alien to perform labor or service of any kind, skilled or unskilled, in the United States.

"Sec. 5. That for every violation of any of the provisions of section four of this act, the person, partnership, company, or corporation violating the same, by knowingly assisting, encouraging, or soliciting the migration or importation of any alien to the United States to perform labor or service of any kind by reason of any offer, solicitation, promise, or agreement, express or implied, parol or special, to or with such alien, shall forfeit and pay for every such offense the sum of one thousand dollars, which may be sued for and recovered by the United States, or by any person who shall first bring his action therefor in his own name and for his own benefit, including any such alien thus promised labor or service of any kind as aforesaid, as debts of like amount are now recovered in the courts of the United States; and separate suits may be brought for each alien thus promised labor or service of any kind as aforesaid. And it shall be the duty of the district attorney of the proper district to prosecute every such suit when brought by the United States.

"Sec. 6. That it shall be unlawful and be deemed a violation of section four of this act to assist or encourage the importation or migration of any alien by a promise of employment through advertisements printed and published in any foreign country; and any alien coming to this country in consequence of such an advertisement shall be treated as coming under a promise or agreement as contemplated in section two of this act, and the penalties imposed by section five of this act shall be applicable to such a case; provided, that this section shall not apply to states or territories, the District of Columbia, or places subject to the jurisdiction of the United States, advertising the inducements they offer for immigration thereto, respectively."

United States v. Craig (C. C.) 28 Fed. 795, decided in 1886, held that under the Act of 1885 the offense denounced by section 1 was not complete until the alien laborer had entered the United States.

United States v. Borneman (D. C.) 41 Fed. 751, decided in 1890, placed the same construction upon the Act of 1885, citing and following United States v. Craig.

United States v. Gay (C. C.) 80 Fed. 254, decided in 1897, dealt with the Act of 1885 as amended in 1891, and held, following United States v. Craig, that it was essential to show that the immigrant actually migrated into the United States.

United States v. Baltic Mills Co., 124 Fed. 38, 59 C. C. A. 558, decided in 1903 by the Circuit Court of Appeals in the Second Circuit, also dealt with the Act of 1885 as amended in 1891. In the decision it was pointed out that, as held in United States v. Craig, under section 1 of the Act of 1885:

"The penalty did not accrue unless (1) the alien had, previous to his migration, entered into a contract to perform labor or service in this country; and (2) had actually migrated here, and (3) the defendant had, by prepayment of transportation or otherwise, encouraged or assisted his migration, knowing that such a contract had been entered into."

The court there also held that the amendatory Act of 1891 was intended to remedy defects in the pre-existing statute in two particulars, and that it did so by dispensing (1) "with the necessity of proving that there had been a contract with the alien made previous to the importation or migration," and (2) with the necessity of proving "that there had been any other assistance or encouragement to his migration than the promise of employment," and that "it adds to the acts penalized by the former statute, and makes it penal to assist or encourage the migration by promise of employment through advertisement," and that the word "promise" is used in the sense in which advertisements commonly promise employment to applicants. This decision is a clear recognition of the necessity of actual migration to this country, both under section 1 of the Act of 1885 and under the amendment of 1891.

While we agree that actual migration to this country is essential to constitute the offense denounced in the amendatory Act of 1891, we do not think that the latter act did away with any of the three prerequisites set forth in United States v. Craig as essential to constitute the offense under sections 1 and 3 of the Act of 1885. On the contrary, we think that the Act of 1891 created a new offense, where the migration of the alien was brought about by promise of employment through advertisement printed or published in any foreign country, and left the offense denounced by sections 1 and 3 of the Act of 1885 as it had previously existed.

In Holy Trinity Church v. United States, 143 U. S. 457, at page 463, 12 Sup. Ct. 511, 36 L. Ed. 226, decided by the Supreme Court in 1892, Mr. Justice Brewer refers to the decision in United States v. Craig with approval. It was also cited with approval in United States v. Laws, 163 U. S. 258, 262, 16 Sup. Ct. 998, 41 L. Ed. 151, a decision rendered by the Supreme Court in 1896, wherein it considered the Act of 1885.

The foregoing well-known and well-established construction having been placed upon the provisions in question of the acts 1885 and 1891, and the same provisions having been re-enacted by Congress in 1903 and 1907 without any material change, we must regard these later enactments as made in recognition of the construction that had been placed upon those provisions as above, and that, if any doubt as to the true meaning of the particular provisions here in question might otherwise exist, it was put at rest by the re-enactments of 1903 and 1907.

We think this conclusion further supported by the fact that the subsequent Act of 1917 (Act Feb. 5, 1917, c. 29, 39 Stat. 874), being the last revision of the immigration laws, modified the provisions of the previous statutes by expressly making it unlawful, in sections 5 and 6—

to "attempt to induce, assist, encourage or solicit the importation or migration of any contract laborer or contract laborers into the United States" (section 5); or to "attempt to induce, assist, encourage, or solicit any alien to come into the United States by promise of employment through advertisements printed, published, or distributed in any foreign country," etc. (section 6).

We are not inclined to follow the decisions in New York Central, etc., Co. v. United States, 239 Fed. 130, 152 C. C. A. 172, decided by

the Court of Appeals in the Second Circuit, in January, 1917; and United States v. Morrisey, 245 Fed. 923, —— C. C. A. ——, decided by the Court of Appeals in the Eighth Circuit, in October, 1917. The first case arose under sections 4 and 5 of the Act of 1907, and the second case under section 6 of that act (Comp. St. 1916, § 4251); the first two being the sections involved in this case and referred to above. In neither decision is any allusion made to the fact that sections 4 and 5, so far as they relate to the question before us, are re-enactments, without material change, of sections 1 and 3 of the Act of 1885; and section 6 a re-enactment of section 3 of the amendatory Act of 1891; or to the fact that under said provisions of the acts of 1885 and 1891 it had become a well-settled construction of these provisions that proof of migration into this country was essential to the establishment of the offense which they denounced.

The plaintiff fails to satisfy us that any provisions in the Act of 1907 not found in its predecessors sufficiently show Congress to have really intended in 1907 what it did not expressly enact until 1917.

We therefore agree with the reasoning and conclusions of the District Court in the present case, and hold that it did not err in sustaining the demurrer.

The judgment of the District Court is affirmed.