C. E. COMBS *v.* STANDARD OIL COMPANY OF LOUISIANA.

*(Nashville,* December Term, 1932.)

Opinion filed April 8, 1933.

S<small>HRIVER</small>, T<small>RAVIS</small> & S<small>HRIVER</small>, for plaintiff in error.

A<small>NDERSON</small>, A<small>UST</small>, M<small>C</small>G<small>UGIN</small> & E<small>VANS</small>, for defendant in error.

M<small>R</small>. J<small>USTICE</small> M<small>C</small>K<small>INNEY</small> delivered the opinion of the Court.

This is a suit to recover damages for the alleged breach of a contract of employment. The trial court sustained a demurrer to the declaration and dismissed the suit. Plaintiff has appealed, and insists that the trial court was in error in dismissing his suit.

The declaration alleges that plaintiff was employed by defendant on November 12, 1929, to operate its filling station on the Murfreesboro Road, near Nashville, and in violation of the written contract of employment the

defendant wrongfully discharged him on September 26, 1931.

At the time of said employment defendant was operating said filling station under a five-year lease, which expired in October, 1934, and plaintiff insists that his employment was coterminus with said lease. But the lease contract provides for its termination upon thirty days' notice to the lessor, and the lessee was also given an option to purchase the property any time during the lease for $6,000. The lease was, therefore, of uncertain duration, but plaintiff insists that so long as said lease was in effect he was to operate this filling station.

On the other hand, defendant insists that plaintiff was not employed for any definite time, and hence the contract could be terminated at will.

In section one of the agreement it is provided: "Said employment shall continue so long as said second party complies with the terms and conditions herein set forth."

The general rule governing employments of this character is thus stated in 39 Corpus Juris, 71-72;

"A contract of employment for an indefinite term may, in the United States, be terminated at the will of either party. A contract for permanent employment where the consideration is paid wholly or partly in advance, as by the relinquishment of a claim for personal injuries, or which is supported by a consideration other than the promise to render services, is not such an indefinite contract as to come within the rule. But a contract for permanent employment, so long as it is satisfactorily performed, which is not supported by any consideration other than the obligation of service to be performed on the one hand and wages to be paid on the other, is terminable at the pleasure of either party."

To illustrate, in the following cases it was held that the employment was at will:

*Willcox & Gibbs Sewing Machine Co.* v. *Ewing*, 141 U. S., 626, 35 L. ed., 882: "Violation of the spirit of this agreement shall be sufficient cause for its abrogation."

*Clarke* v. *Atlantic Stevedoring Co.*, 163 Fed., 423: "I have work immediately for 200 colored longshoremen, and can guarantee the above number continuous work, providing they are good men. . . . We propose to keep colored men at work as long as they fulfill their part of the program."

*Louisville & Nashville R. R. Co.* v. *Offutt*, 99 Ky., 427, 59 Am. St. Rep., 467: "That said regular work would continue so long as this plaintiff did faithful and honest work for the defendant."

*St. Louis I. M. & S. R. Co.* v. *Matthews* (Ark.), 39 L. R. A., 469: "Appellant agreed . . . not to discharge him without just cause, to promote him according to certain grades of service, and, when it saw fit to reduce the number of engineers, to discharge them in the order of their juniority."

*Rape* v. *Mobile & O. R. Co.* (Miss.), 35 A. L. R., 1424: "Your job is permanent if your work is satisfactory."

In *Arentz* v. *Morse Dry Dock & Repair Co.*, 249 N. Y., 439, 62 A. L. R., 231, 234, the court said:

"Wherever these words, 'permanent employment,' have been used in contracts which have been made between employer and employe, under circumstances as they appear in this case, they have been held to mean a steady employment, a steady job, a position of some permanence, as contrasted with a temporary job or a temporary employment. Standing alone and by themselves, they do not mean life employment. *Sullivan* v. *Detroit,*

*Y. & A. A. R. Co.,* 135 Mich., 661, pagé 671, 64 L. R. A., 673, 106 Am. St. Rep., 403, 98 N. W., 756. An agreement to give a person permanent employment means nothing more than that the employment is to continue indefinitely, and until one or the other of the parties wishes for some good reason to sever the relation. *Lord* v. *Goldberg,* 81 Cal., 596, 15 Am. St. Rep., 82, 22 Pac., 1126; *Rape* v. *Mobile & O. R. Co.,* 136 Miss., 38, 35 A. L. R., 1422, 100 So., 585; *Texas & P. R. Co.* v. *Marshall,* 136 U. S., 393, 34 L. Ed., 385, 10 Sup. Ct. Rep., 846; *Perry* v. *Wheeler,* 12 Bush, 541.''

 Nothing further appearing, upon the authorities cited, the employment of plaintiff was at will, and this conclusion is not seriously controverted; but it is insisted that section eleven of the contract shows an intent that the employment was to continue so long as the lease, referred to above, was in effect. Said provision is as follows:

''It is understood that first party holds the premises above described under a lease and that this contract shall terminate and end with the termination of said lease for any cause, including the exercise by first party of the option therein granted to it.''

There would be force in this contention but for the preceding, or tenth, section, which provides:

''Second party agrees that should he desire to resign or cease the employment hereby created, he will give to first party thirty (30) days' notice in writing of his intention so to do.''

If section eleven be given the construction contended for by the plaintiff, then the defendant was obligated to retain him in its employ until October, 1934, if the lease was not terminated sooner; while, on the other hand

plaintiff was at liberty to end his employment at any time upon giving thirty days' written notice. Such a contract would be invalid because lacking in mutuality. 13 Corpus Juris, 337.

There can be no controversy as to the meaning of section ten, and such agreements are usually enforced by the courts.

In 39 Corpus Juris, 73, it is said: "Where a contract of employment provides for its termination at any time upon the giving of a stipulated notice, such provision must be complied with, and a discharge or abandonment without the required notice is unlawful."

*In Diamond State Iron Co.* v. *Bell,* 16 Del., 303, it was held that a rule requiring two weeks' notice of intention to quit service, on pain of forfeiture of wages due, is reasonable, and, if assented to by the employe, would become part of the contract of employment.

The object of section ten, according to defendant, was to afford it an opportunity to secure another agent should plaintiff decide to quit its employ; but defendant insists that plaintiff was not bound to give such notice, since the contract was determinable at will and did not require it to give notice to plaintiff in the event it decided to end the employment. We find it unnecessary to decide this question. It is sufficient to say that this provision shows very clearly that the parties did not intend that the employment of the plaintiff should be coterminus with the lease. If such was their intention, then it was unnecessary to insert section ten.

By section eleven plaintiff was charged with notice that in any or all events when the lease was terminated his employment was at an end. This is a cautionary stipulation. There is no express provision in the contract

binding plaintiff to operate this plant for a definite time, and it is only by implication that he insists that his employment shall continue so long as the lease exists, and this position is contradicted by the clear and unequivocal language in section ten. The burden is on plaintiff to show that his employment was for a definite period, and this he has failed to do.

Plaintiff further contends that the general rule as to indefinite contracts of employment has no application, for the reason that the agreement on his part was supported by a consideration other than, or in addition to, his promise to render services. The facts alleged in the declaration do not bring the case within the rule relied upon. Under the contract plaintiff was permitted to sell accessories on his own behalf. This was a concession for his profit, and was of no benefit to defendant. Plaintiff also assumed liability for injuries resulting from negligent operation of the station, and was to pay operating expenses. As suggested by counsel for defendant, these were obligations for which plaintiff would have been bound in the absence of an express stipulation to that effect. Under the agreement plaintiff took charge of the plant and sold the gas and oil of the defendant upon a commission rather than upon a salary. These are but different methods of arriving at the compensation which an employe is to receive for his services. The method adopted afforded plaintiff an opportunity of earning a greater compensation than he would receive if he worked for a fixed salary. In addition to selling gas and oil, plaintiff contemplated selling accessories on his own behalf. He was to employ and pay for such help as he might need, but those so employed were to be his servants and not those of defendant, and for any injuries result-

ing from the negligent operation of said station plaintiff and his employes would be liable.

We have been referred to no authority that would bring this case within the rule invoked. It will be observed that in the Corpus Juris text, quoted above, it is provided that "A contract for permanent employment where the consideration is paid wholly or partly in advance, . . . is not such an indefinite contract as to come within the rule." In the instant case there was no advanced consideration.

We find no error in the judgment of the trial court, and it will be affirmed.