---

### UNITED STATES v. LAVARRELLO.

(Circuit Court, S. D. New York.   November 27, 1906.)

1. SHIPPING—TRANSPORTATION OF IMMIGRANTS—REGULATION—POWER OF CONGRESS.

Congress had power to pass Act Aug. 2, 1882, c. 374 [U. S. Comp. St. 1901, p. 2931], making it an offense for the master of a foreign vessel to omit to provide tables and seats at regular meals for immigrants or passengers, other than cabin passengers, bound to the United States and actually brought to a port of landing.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, §§ 2, 527, 533.]

2. INDICTMENT—CERTAINTY—BILL OF PARTICULARS—NEW BILL.

An indictment against the master of a vessel transporting immigrants to a port of discharge within the United States, charging that there were no sufficient tables and seats provided for the use of such passengers, in violation of Act Cong. Aug. 2, 1882, c. 374 [U. S. Comp. St. 1901, p. 2931], though objectionable for failure to allege in what respects the insufficiency consisted, was not fatally defective, but the charge should be made more definite and certain by a bill of particulars or by a new indictment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Indictment and Information, §§ 266–268.]

Henry L. Stimson, U. S. Atty., and William Michael Byrne, Asst. U. S. Atty.

Kellogg & Rose (Abram J. Rose and Alfred C. Pette, of counsel), for defendant.

THOMAS, District Judge.   The indictment is drawn under section 1 of the act of August 2, 1882 (22 Stat. 186, c. 374 [U. S. Comp. St. 1901, p. 2931]), which, so far as applicable to this action, provides:

"That it shall not be lawful for the master of a steamship or other vessel whereon immigrant passengers or passengers other than cabin passengers have been taken at any port or place in a foreign country or dominion (ports and places in foreign territory contiguous to the United States excepted), to bring such vessel and passengers to any port or place in the United States unless the compartments, spaces and accommodations hereinafter mentioned have been provided, allotted, maintained and used for and by such passengers during the entire voyage."

And the provision about tables and seats as mentioned in the indictment is found in section 4 of the act [U. S. Comp. St. 1901, p. 2935] as follows:

. "Tables and seats shall be provided for the use of passengers at regular meals."

The indictment charges:

"That the steamship Citta Di Napoli, at the times hereinafter mentioned, was engaged in the business of conveying immigrant passengers across the Atlantic Ocean from the kingdom of Italy to the United States of America, and that Eugenio Lavarrello was the master of said steamship; that on the first day of August, in the year of our Lord, one thousand nine hundred and five, the said steamship commenced a voyage from Italy aforesaid to the said United States and completed the same on the 18th day of August of the same year, at the port and Southern district of New York, and the said Eugenio Lavarrello was master and in command of said vessel during said voyage, and there were then in and on board of the said steamship under his command and control no less than 929 immigrants, as steerage passengers, every one of whom by law, on each day, was entitled to be served on shipboard with three meals at regular and stated hours, and the said immigrant passengers were also by law entitled to tables and seats, for their use, at the meals aforesaid; but during the said voyage, on each and every day thereof, there were not sufficient tables and seats for the use of the said passengers at their regular meals aforesaid, as the law required; and on the said 18th day of August, in the said year, at the Southern district of New York, within the jurisdiction of this court and within the admiralty and maritime jurisdiction of the United States, on the day of the arrival of the said steamship, at the said port of New York, the said Eugenio Lavarrello, master of the said steamship as aforesaid, did still unlawfully and willfully fail, omit, and neglect to provide tables and seats as aforesaid for the use of the said steerage passengers at the regular meals, or at any and all meals served to them on that day, in and upon the said steamship, as required by law."

The most important question raised by the demurrer relates to the power of Congress to make penal an omission by a foreign vessel to provide tables and seats, at regular meals, for passengers bound to the United States, and actually brought into a port of landing. However vaguely or ineffectively Congress has exercised the power, it is considered that the power exists, and it is unnecessary in reaching this conclusion to follow the history of passenger acts from an early time in the last century, or the decisions pertaining thereto. The brief for the government carefully informs in such regard. The act directs that "tables and seats shall be provided for the use of passengers at regular meals." If it be kept in mind that this provision is penal, the indefiniteness of its command excites instant and grave attention. What does it mean? What does it require? It conveys primarily the idea that the master shall not bring passengers to port unless there be tables at which, and seats upon which, the passengers may sit at their regular meals; that they shall not be obliged to sit on the floor, or stand up while eating their meals, or to hold in their laps plates and provisions. But the statute makes no attempt to state how ample the facilities shall be, or what the ratio of seats to passengers shall be. But common sense aids in interpretation. The direction plainly means that tables and seats, reasonably adequate for the passengers carried, shall be provided for use at proper times. The carrier knows the ship's capacity, the number of passengers to be carried, and can make provision therefor before sailing. If it fails in this duty, the master entering upon the voyage and bringing the ship to port is punishable. The great variety of circumstances under which passengers are carried makes it impossible, and also undesirable for the carrier, that specific

detail as to the exact provision of tables and seats should be given in the statute. Hence, it is concluded that the pleader was justified in charging that "there were no sufficient tables and seats for the use of the said passengers." In what respects were the seats insufficient? Number, construction, or in what other respect? An indictment may be valid, but yet require amplification for the purposes of the trial; and, while it is considered that it is technically supportable, it informs neither the court nor the defendant in what particulars the master was at fault. Therefore the defendant should be informed in what respect the tables and seats were insufficient. The government may do this by a bill of particulars, but preferably to introducing that practice a new indictment is advised.

Demurrer overruled, with leave to the government to nolle the present indictment, or to serve a bill of particulars, and with leave to the defendant to move or plead, as he shall be advised, after the service of such bill of particulars.