UNITED STATES v. NORD DEUTSCHER LLOYD.

(Circuit Court, S. D. New York. April 8, 1911.)

1. ALIENS (§ 40*)—IMMIGRATION—DEPORTATION—SECURITY FOR RETURN—STATUTES—CONSTRUCTION.

Immigration Act Feb. 20, 1907, c. 1134, § 19, 34 Stat. 904 (U. S. Comp. St. Supp. 1909, p. 458), provides that if the owner of any vessel bringing an alien not entitled to enter shall make any charge for the return of such alien, or shall take any security from him for the payment of such charge, he shall be guilty of a misdemeanor. Held, that such provision applies only to acts done within the United States, since to construe it as applicable to acts occurring wholly within foreign territory would render it violative of international law.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 40.*]

2. ALIENS (§ 59*)—DEPORTATION—CHARGE FOR RETURN PASSAGE—OFFENSES—INDICTMENT—"CHARGE."

Immigration Act Feb. 20, 1907, c. 1134, § 19, 34 Stat. 904 (U. S. Comp. St. Supp. 1909, p. 458), provides that if the owner of a steamship shall make any "charge" for the return of any alien brought to the United States and not entitled to enter, or shall take any security from him for the payment of such charge, he shall be guilty of a misdemeanor. An indictment alleged that defendant steamship company at Bremen collected return passage money from proposed immigrants who were within the excluded classes, and that it afterwards brought them to New York, and, knowing of their proposed deportation, holds the money as security for a charge to be made for deportation. Held, that the word "charge" as so used did not import a continuing act, but meant an overt act, by which the charging party manifested his purpose to demand the money charged from the person charged, excluding the subsequent relations which were consequences of the act, and that the indictment was therefore fatally defective for failure to allege that the forbidden "charge" was made with the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

intent to apply the amount so collected to the return of the aliens under deportation.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 59.*

For other definitions, see Words and Phrases, vol. 2, pp. 1064-1072; vol. 8, pp. 7599, 7600.]

3. ALIENS (§ 59*)—IMMIGRATION—OFFENSES—SECURITY FOR DEPORTATION—INDICTMENT—"TAKING SECURITY."

Under Immigration Act Feb. 20, 1907, c. 1134, § 19, 34 Stat. 904 (U. S. Comp. St. Supp. 1909, p. 458), providing that if any shipowner shall make any charge for the return of any alien brought to the United States and not entitled to enter, or shall take any security from him for the payment of the charge of deportation, he shall be guilty of a misdemeanor, an indictment alleging that defendant at Bremen collected return passage from certain proposed immigrants who were within the excluded classes, and held the money as security for a charge to be made for deportation, did not charge the taking of the money as security within the United States, since to retain money taken in a foreign country was not a continuous repetition of the "taking" within the United States by reason of the fact that the aliens were brought to the United States and ordered deported because not entitled to enter.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 59.*

For other definitions, see Words and Phrases, vol. 8, pp. 6851-6863; vol. 8, p. 7813.]

Indictment against the Nord Deutscher Lloyd for violating the immigration act in making a charge for the return passage of aliens brought to the United States and ordered deported on being found not entitled to enter. On demurrer to the indictment. Sustained.

William S. Ball, for the United States.
Joseph Larocque, for the defendant.

HAND, District Judge. [1] The defendant asserts, and the government does not deny, that the act means to make criminal only such acts as occur within the territory of the United States. It is therefore unnecessary to consider what would be the effect of an act which subjected to punishment a corporation doing business in our territory for acts occurring wholly in the territory of the city of Bremen. Such legislation would be clearly violative of the general principles of international law (American Banana Co. v. United Fruit Company, 213 U. S. 347, 29 Sup. Ct. 511, 53 L. Ed. 826); but whether it would be a matter for the court to say that it was void is not now up for consideration. The question is whether any act has occurred here which is within the words of the statute. Those words are: "Shall make any charge for the return of any such alien, or shall take any security from him for the payment of such charge." The "security" intended is for the "charge"; the "return" intended is a "deportation" under the act as an excluded alien. So much will, I believe, be conceded by both sides.

The allegations of the indictment may be paraphrased as follows: (a) That the defendant is a foreign corporation transporting passengers to and fro, between this country and Germany. (b) That on a day mentioned it brought two aliens from Bremen into the port of New York. (c) That theretofore and at Bremen the defendant col-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

lected of the aliens passage money and return passage money; for the latter giving a receipt exchangeable for a return ticket. (d) That the aliens were brought in in violation of law and are within the excluded classes. (e) That the defendant still holds and retains the return passage money, "making charge thereof for the return of such aliens, and being taken and continuously held by the said defendant, as security * - * * for the payment of such charge." It is very difficult to understand what the pleader means by the last words, for the defendant could hardly at once make charge for the return by retaining the rubles and be taking them as security for such a charge. I shall construe the words as adding nothing to the substantial allegations of the "charge," but as asserting that the defendant is holding the rubles as security for a future "charge." Stripped therefore of all verbiage, the indictment charges only that the defendant at Bremen collected return passage money from proposing immigrants, who were in fact within the excluded classes, and that it afterwards brought them to the port of New York, and, knowing of their proposed deportation, holds the money as security for a charge to be made for deportation. The questions raised are, therefore: First, whether in doing so the defendant "charged" the aliens in New York for a return passage; and, second, whether, in New York, it "took security" for such a charge.

This first question has two aspects: First, whether the defendant at any place "charged" the aliens within the terms of the act; and, second, whether such a charge took place in New York. It is certainly true that the defendant at Bremen charged the aliens for a return passage, and that the next return passage of the aliens will be under order of deportation. Unless, therefore, the statute requires that the forbidden "charge" must be made with intent to apply to a return under deportation, the indictment alleges a crime committed at Bremen. I think, however, that the statute does require such an intent, and that merely to take prepayment of return passage money from an alien subsequently excluded is clearly not within the statute, unless the return contemplated was a return under deportation. A contrary construction would involve the construction that the charge is "for" the return under deportation, though no one so supposes at the time. The word "charge" normally involves the idea that the charging party has in mind apportioning the sum charged against a specific item, and, unless the item be a return under deportation, he can hardly be said to have charged "for" such a return. In this respect, therefore, the indictment is deficient from any point of view. Nor it is enough, even though from the allegations it might be inferred evidentially that the defendant entertained such an intention, for no indictment may lay only the evidence, from which the necessary allegations shall be inferred. The eventual facts must themselves be stated, and this indictment lacks any statement that the charge made at Bremen was for a return under deportation.

[2] But that is only one difficulty, because, even if there had been adequate allegation of a charge for "such return," the only charge took place at Bremen. If, because of the subsequent deportation, the

defendant at New York insists upon taking up the receipt, or upon canceling the aliens' right to a return passage, or in any other way changing his rights under the receipt, then perhaps it charges the aliens here. That question is, however, not raised by any allegation in this indictment, for the defendant has done nothing in our territory but bring in the aliens. However, the government says that this is a continuing offense, and that it was completed here. Armour & Co. v. U. S., 209 U. S. 56, 28 Sup. Ct. 428, 52 L. Ed. 681. No doubt Congress could make it an offense to bring in an alien of the excluded classes whose passage had been prepaid, and punish a company for doing so. U. S. v. Craig (C. C.) 28 Fed. 795; U. S. v. Lavarrello (C. C.) 149 Fed. 297. Whether that would be strictly a continuing offense or not is not important, for so much of it as happened here would in any case be sufficient to justify the action of Congress. But that is not what Congress has in fact forbidden, unless it can be said that the defendant is continuously charging the aliens for their return passage every moment from the time the money is received until they return. I do not mean that any difficulty arises from the whereabouts of the money, for it would be enough if the defendant took up the receipt in New York, no matter where the money may be. The trouble is rather that to interpret the word "charge" as a continuing act is to introduce a fiction and to violate its ordinary, and so its proper, meaning. The word means some overt act by which the charging party manifests his purpose to demand the money charged from the party charged; it does not include the subsequent relations which are consequences of the act. In short, it is not a legal relation, which continues wherever the two parties may come. For instance, we should all recognize the unreality of saying that a man was charged for goods sold, not only where the bargain was made and the charge entered, but at all other places where he went before he had paid for them. Yet there can be no continuing offense here, unless we assume that the charge is being made wherever the aliens come, till the whole matter is finally settled or "discharged." While the question is after all only of the meaning of words, the surest way to miss their meaning is to engage in casuistical analyses of their logical implications.

I have assumed throughout, as I said at the outset, that the added words, "making a charge thereof," are not to be construed as alleging that the defendant has done any act in New York but fail to give up the rubles after knowing that the deportation was ordered, and that, so far as its acts are concerned, it has not yet committed itself towards the aliens in regard to a charge for the return passage. That was the way in which the case was argued, and, moreover, if the indictment means to rely upon such an allegation, it should specify what are the acts in New York which constitute a charge.

[3] The second question is whether the defendant in New York has taken security for such a charge. The allegation is that it now "retains" the money after the aliens have reached New York, and that, as I have said, is a good enough allegation of retaining it in New York, though the rubles never passed out of Bremen and were never meant to. Now the indictment squarely alleges that the defendant retains the rubles as security for the deportation charges, and that therefore

eliminates the first point raised in regard to the "charge," and raises the single question whether to "retain" the security is to "take" it under the act. Granted that retaining presupposes some form of previous acceptance, and that any kind of acceptance is a taking, the real point is that the taking is over when the taker has got possession of the thing taken. His subsequent retention is in no sense a continuous repetition of his original taking, and it is only to abuse words to say so. Just as in the matter of the "charge," the contention of the government confuses the results of the act forbidden with the act itself. The only even remote analogy that I can think of is the rule that a thief commits larceny in every county into which he carries the stolen goods; but, aside from the historical reasons for that rule which make it no safe basis of general analogy, even that depends upon the carriage of the goods from place to place. I can see no more reason to say that the defendant takes security in New York when the alien arrives here, than to say that a trespasser de bonis asportatis commits a new trespass in every place to which his victim or he himself may subsequently come.

The real strength, and the only strength, of the position is that there is here disclosed a very easy way of avoiding an equitable provision of the immigration act. Whether it is used or not, it is an obvious way of avoiding a perfectly proper provision which puts on the steamship companies the risk of importing aliens within the excluded classes. Certainly that was the purpose of Congress, and this is an ingenious way of circumventing that purpose, which it is unfortunate that the law does not meet. However, if the expressed intent of Congress has not anticipated the possible inventions to defeat its purpose, while the purpose may help us to read the words, the words in the end can be the only vehicle of the intent. The court even in a good cause may not impose on words a meaning that they will not bear.

Demurrer sustained, and indictment quashed.