UNITED STATES v. NEW YORK CENT. & H. R. R. CO.

(District Court, N. D. New York.   May 1, 1916.)

1. ALIENS  ⬡⇒56 — IMMIGRATION — CONTRACT  LABORERS — PREPAYMENT  OF
      TRANSPORTATION.
      A railroad company, which sent its duly authorized agent into Canada
   to employ men to work on its section in the United States, and furnished
   the agent with free transportation over its own lines for the men he
   should employ, is guilty of a misdemeanor, under Act Feb. 20, 1907, c.
   1134, § 4, 34 Stat. 900 (Comp. St. 1913, § 4248), making it a misdemeanor
   for any person or corporation in any manner whatsoever to prepay the
   transportation of any contract laborer into the United States.

      [Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 113–116;  Dec.
   Dig. ⬡⇒56.]

2. ALIENS  ⬡⇒56—IMMIGRATION—CONTRACT LABORERS—"SOLICIT."
      The corporation was also liable to the penalty imposed by section 5 of
   that act (Comp. St. 1913, § 4250) on any corporation which · knowingly
   solicits the immigration of any contract laborer, though the laborers em-
   ployed were denied admission by the immigration authorities, since to
   "solicit" does not imply success, but merely means to incite.

      [Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 113–116;  Dec.
   Dig. ⬡⇒56.

      For other definitions, see Words and Phrases, First and Second Series,
   Solicit.]

3. WORDS AND PHRASES—"PERSUADE."
      While the primary meaning of "persuade" is to advise or counsel, it
   has a secondary meaning, which is to prevail upon by demonstration, ex-
   position, or argument, and implies the completed act.

      [Ed. Note.—For other definitions, see Words and Phrases, First and
   Second Series, Persuade.]

At Law.   Action by the United States against the New York Central
& Hudson River Railroad Company to recover a penalty for the viola-
tion of Act Feb. 20, 1907, c. 1134, §§ 4, 5 (34 Stat. 900).   Judgment
ordered for the United States.

Dennis B. Lucey, U. S. Atty., of Ogdensburg, N. Y.

McLarey & Allen, of New York City, and Alex. H. Cowie, of Syra-
cuse, N. Y., for defendant.

RAY, District Judge.   The defendant is a railroad corporation or-
ganized and existing under the laws of the state of New York and en-
gaged in the business of a common carrier and in operating and con-
structing railroads and branches thereof in the state of New York and
in the Northern district thereof, and one or more of which branches
extend into the Dominion of Canada, kingdom of Great Britain.   The
defendant had in its employ as supervisor of tracks, including the
branch extending into Canada on the Adirondack Division and to Adi-
rondack Junction in the Dominion of Canada, one Fred W. Vincent,
who had power and authority from the defendant to employ and dis-
charge manual laborers on its tracks and in the construction and repair
of its railroad.   Shortly prior to June 6th the defendant was in want

of men to work for it on its tracks as manual laborers, and said Vincent, acting pursuant to his authority in employing and discharging laborers, wrote to one Enrico Canale a letter of which the following is a copy and delivered same to the said Canale:

"New York Central & Hudson River Railroad Company.

"Remsen, 6/6.

"E. Canale, Brandreth—Dear Sir: I called up Mr. Sisti about the five men that you spoke about; he says that he don't know anything about them, so if you could get a hold of them send them to me as I am ten men short in extra gang now. About these men at Canada, could you get them if you went after them with a pass. Let me know at once. If you can get some go after them at once.

"Yours truly,                      [Signed]   F. W. Vincent."

Shortly prior thereto the defendant company had issued and delivered to said Canale a pass giving him free transportation between Keepawa and Fulton Chain in the Northern district of New York and on one of the branches of said defendant company, and had also issued a free pass giving free transportation to ten employés of the company as follows:

"New York Central Railroad Company, Buffalo and East. 1913. C. H. 55. Pass 10 employés. Account Laborers M. of W. Dept. When identified. Between all stations Adirondack Division. Good until June 30, 1913."

This pass was delivered to Fred W. Vincent and by him to said Canale shortly before the delivery of said letter. Said Enrico Canale was in the employ of the defendant company under and subordinate to said Vincent as section foreman of section 14 in said Northern district of New York. He was subject to the control and orders of said Vincent. At said times Columbi Napoleoni, Giuseppe Papi, Giuseppe Bove, Pietro Bove, and Antonio Tenace were alien laborers, not citizens or residents of the state of New York, but citizens of the kingdom of Italy and alien manual laborers, and were then at or near Montreal, in the Dominion of Canada, kingdom of Great Britain, and did not belong to any class permitted to enter the United States under the provisions of the Contract Labor Law.

Pursuant to the directions and authority of said letter the said Enrico Canale proceeded to Montreal, Canada, and there solicited and engaged the said persons, alien contract laborers, to come into the United States and work for the defendant railroad company. On the 9th day of June, 1913, two of said contract laborers, Napoleoni and Papi, appeared before the board of special inquiry of the United States Immigration Service in the Montreal district and then and there applied for admission into the United States. An inquiry was set on foot as to their right to enter the United States, and this inquiry was held open until the 10th day of June, 1913, on which day the said Giuseppe Bove, Pietro Bove, Antonio Tenace, Columbi Napoleoni, and Giuseppe Papi, accompanied by the said Enrico Canale, appeared before the said board of special inquiry of the United States Immigration Service, the entire board being present, and application was then and there made for the admission into the United States of said persons, and said Canale then and there requested the admission of said persons into the United

States. The inquiry resulted in the rejection of said persons, and they were refused admission into the United States.

It was clearly the intent and purpose of the defendant, acting through its said agent, Vincent, to secure the immigration and importation into the United States of the said five alien contract laborers, and it is clear that they were encouraged to come into the United States as contract laborers and employed as such, and encouraged and solicited to migrate into the United States as such. It is also clear that the pass was to be used by Canale in traveling back and forth, and that the pass for ten employés was delivered to Canale to be used by him in bringing such alien contract laborers into the United States.

[1] It appears from the facts stated: (1) That defendant in the state of New York, Northern district, did certain acts for the purpose of actually bringing these alien contract laborers into the United States by authorizing its agent to engage them and bring them into the United States to there perform manual labor and by furnishing him with a pass, or free transportation, over its roads while engaged in the performance of this undertaking, and by also furnishing him with a pass, or free transportation, for such alien contract laborers from Canada to the border of the United States, and then to their destination in the United States, should he engage them and succeed in getting them across the border, thereby prepaying their transportation. (2) The actual engaging or hiring and solicitation of these laborers to come into the United States was, so far as appears, done in Canada, but was done by the authority and direction of the defendant. In short, the defendant sent its agents and employés, with full authority to hire such alien contract laborers and bring them into the United States, into Canada, there to employ such laborers and induce and solicit them to come into the United States, and in the United States engage in manual labor for the defendant, and prepaid their passage by issuing free transportation for them over its own road from Canada into the United States. (3) Such agent of the defendant, so authorized, in execution of his agency, actually went into Canada and induced and solicited such contract laborers to come into the United States, and they with the aid and at the procurement and solicitation of the defendant undertook to come in, and the defendant by its said agent undertook to bring them in, their passage being prepaid by defendant; but, the purpose being disclosed, they were turned back and denied admission.

Therefore there was no *actual coming* into the United States, no *actual* entry, no actual immigration or importation of such contract laborers *into* the United States. The statute says (Act Feb. 20, 1907, c. 1134, § 5 [2 U. S. Comp. Stat. 1913, § 4250]):

"For every violation of any of the provisions of section four of this act, the persons, partnership, company or corporation violating the same, by knowingly assisting, encouraging, *or soliciting* the immigration or importation of any contract laborer into the United States shall forfeit and pay for every such offense the sum of One Thousand dollars," etc.

Section 4 of the same act (Comp. St. 1913, § 4248) reads as follows:

"It shall be a misdemeanor for any person, company, partnership, or corporation, in any manner whatsoever, to prepay the transportation or in any

way to assist or encourage the importation or migration of any contract laborer or contract laborers into the United States, unless such contract laborer or contract laborers are exempted under the terms of the last two provisos contained in section 2 of this act. 34 Stat. 900."

The passage of these five alien contract laborers was as much prepaid by this defendant, by issuing and delivering the pass with intent that it be used for the purpose, as if the defendant had paid actual cash. By section 4 it is a misdemeanor *"in any manner whatsoever* to prepay the transportation" of "contract laborers into the United States," and in my judgment this is done when the corporation, owning and operating transportation lines reaching into the foreign country, furnishes free transportation over its own lines for alien contract laborers employed by it in such foreign country to come into the United States and perform manual work and labor for it here. Prepaying the transportation is assisting or encouraging the importation or migration, and clearly section 4 of the act makes it a misdemeanor *"in any manner whatsoever* to prepay the transportation * * * of any contract laborer * * * into the United States.": The gist of the offense is in prepaying the transportation, and the offense is committed when that is done, whether the contract laborers succeed in getting into the United States or not.

[2] So under section 5 of the act the offense is committed by engaging and *encouraging or soliciting* the coming or immigration of alien contract laborers into the United States, and the offense is complete when the alien manual laborers are actually engaged and encouraged or *solicited* to come in, free transportation having been provided beforehand and delivered for use by the defendant in the United States. This is made clear by the language of Mr. Justice Brewer in Lees v. United States, 150 U. S. 476, 480, 14 Sup. Ct. 163, 164 [37 L. Ed. 1150], where, discussing the Alien Contract Labor Law, as amended by the act of February 23, 1887 (24 Stat. 414, c. 220), the learned justice said:

"Given the power to exclude, it [Congress] has a right to make *that exclusion effective* by punishing those who assist in introducing, *or attempting to introduce,* aliens in violation of its provisions."

The language of sections 4 and 5 of the act of February 20, 1907, makes this clear, for the act of "soliciting the migration" of alien contract laborers subjects the offending party to the penalty imposed, and the statute so reads. To "solicit" and "soliciting" do not even imply success. The Century Dictionary says:

"Solicit. 1. To arouse or incite to action; summon; invite; tempt; allure; entice. 2. In criminal law, to incite another to commit a crime. To entice a man in a public place; said of a prostitute. To endeavor to bias or influence by the offer of a bribe. 3. To disturb; disquiet; make anxious. 4. To seek to obtain; strive after, especially by pleading; ask a thing with some degree of earnestness or persistency; as to solicit an office or favor; to solicit orders. 5. To petition or ask (a person), with some degree of earnestness or persistency; make petition to. 6. To advocate; plead; enforce the claims of; act as solicitor or advocate for or with reference to."

It seems to me clear that, when a corporation has transportation lines for passengers or travelers running into Canada, and, desiring

manual laborers, issues free transportation for such laborers, and sends its agent, provided therewith, into such country for alien contract laborers, with power to solicit and engage them and deliver or use such passes for bringing them into the United States, and such laborers are actually solicited and engaged, and an effort is made to bring them into the United States, the offense against the statute has been committed, even if the officers of the law intervene and prevent the laborers from crossing the border. In my judgment the statute was aimed at attempts to bring in such alien contract laborers, if accompanied by acts committed, some in the United States and some in the foreign country even if the attempt proved abortive and actual migration was prevented.

The defendant corporation was in the United States and there operating, and it was there that it set on foot the offending against the statute and did some of the acts complained of. If *all* the acts had been done in the Dominion of Canada, it might be contended that no offense at all was committed in the United States or within the jurisdiction of this court. United States v. Nord Deutscher Lloyd (C. C.) 186 Fed. 391. However in United States v. Craig (C. C.) 28 Fed. 795, it was said:

"It seems that Congress has power to punish by indictment offenses committed by citizens of the United States upon foreign soil" —meaning, of course, offenses against laws of the United States.

[3] In United States v. Craig, supra, it is true that Judge Brown held, not necessarily or because the question *was in the case,* but because it might arise later in the progress of the case, that the statute as it then read, *taken all together,* indicated an intent on the part of Congress that actual migration or importation into the United States of the alien contract laborers must follow the solicitation and employment. See pages 799, 800. The learned judge cited as authority for his dictum the case of Respublica v. Roberts, 1 Dall. 39, 1 L. Ed. 27, where defendant was indicted under a statute declaring that any person who shall "knowingly and willingly aid or assist any enemies at open war with this state," etc., "by persuading others to enlist for that purpose, shall be adjudged guilty of high treason." Then the court held that the word "persuading" meant "succeeded in procuring others to enlist." This was, of course, the only fair and just construction to put upon such a drastic statute; for, while the primary meaning of the word "persuade" is "to advise; counsel; urge the acceptance or practice of; commend by exposition, argument, demonstration," etc., it has a secondary meaning, "to *prevail upon* by demonstration, exposition, argument, entreaty, etc.; argue or reason into a certain belief or course of conduct; induce; win over." "Persuading" implies the completed act. So does "persuasion," which means "the act of persuading, influencing, or winning over the mind or will to some conclusion, determination or course of action." See Century Dictionary.

On the other hand, as we have seen, "solicitation" or "solicit" has no such meaning, and from it alone we draw no conclusion that the act of solicitation or of soliciting has met with success. The writer of Acts, 26:28, had in mind, when he wrote "*Almost* thou persuadest me to

be a Christian," the difference between solicit and persuade as commonly understood. He did not write, "Almost thou solicitest me to become a Christian." If we say, "Thou solicitest me to become a Christian," we give no indication we are convinced or won over; but if we say, "Thou persuadest me to become a Christian," we affirm that our mind is convinced and our course of action determined upon. In the case referred to, in determining the meaning of "persuading," the court construed it in the most merciful way, gave the defendant the benefit of any doubt as to which meaning was intended by the lawmakers, as was its duty. When we construe the meaning of "solicit" or "soliciting," we must give the word its *only* meaning and that does not include or imply a *successful* solicitation.

I am of the opinion, and hold, that a successful solicitation in this case was not necessary to complete the offense against the provisions of the statute; that is, that to incur the penalty it was not necessary that the alien contract laborers should have actually entered into the United States. As there was but one solicitation, all one act, the defendant incurred one penalty.

There will be a judgment for one penalty of $1,000 and costs. So ordered.