### UNITED STATES v. RIVER SPINNING CO.

(District Court, D. Rhode Island.   July 18, 1917.)

#### No. 1271.

1. ALIENS ⬅️56—IMMIGRATION—CONTRACT LABORERS.

Under Act Feb. 20, 1907, 34 Stat. 898, c. 1134, declaring that laborers induced or solicited to migrate to this country by offers or promises of employment. or in consequence of agreements, oral, written, or printed, express or implied, to perform labor in this country, shall not be admitted, and imposing a penalty upon one knowingly assisting, encouraging, or soliciting the immigration or importation, an actual migration into or entry into the territory of the United States is necessary to warrant a recovery of the penalty, and, where such laborers were rejected at the port of entry, no such penalty can be recovered.

2. ALIENS ⬅️40—IMMIGRATION—CONSTRUCTION OF STATUTE.

In construing Contract Labor Act Feb. 20, 1907. the strict construction adopted by the Circuit Court of Appeals for the circuit in which the District Court was located should be followed.

At Law.   Action by the United States against the River Spinning Company to recover penalties for violation of the Contract Labor Law. On demurrer to the declaration.   Demurrer sustained.

Harvey A. Baker, U. S. Dist. Atty., of Providence, R. I.
Edwards & Angell, of Providence, R. I., for defendant.

BROWN, District Judge.   This is an action of debt for penalties for alleged violation of the contract labor provisions of Act Feb. 20, 1907, c. 1134, 34 Stats. 898.

[1] The principal ground of demurrer is that the declaration does not allege that the aliens actually migrated into or entered into the ter-

ritory of the United States. This raises an important question of substance, upon which there is some disagreement of the decisions. It is alleged that the aliens—

"did attempt and try to migrate into the United States but were at the point of entry into the United States, to wit, Newport, state of Vermont, rejected as alien contract laborers, by a board of special inquiry of the Immigration Service of the United States."

In United States v. Ju Toy, 198 U. S. 253, 263, 25 Sup. Ct. 644, 646 (49 L. Ed. 1040), it was said:

"The petitioner, although physically within our boundaries, is to be regarded if if he had been stopped at the limit of our jurisdiction and kept there while his right to enter was under debate."

The declaration does not in terms allege an entry into the United States, and, if taken with the doubtful implication of a temporary presence of the aliens at Newport, Vt., at the time of rejection, would yet fail to allege an actual migration into the United States. According to several decisions the alien must have actually migrated into the United States in order to give a right of action for the penalty. In United States v. Craig (C. C. 1886) 28 Fed. 795, 799, 800, this question was carefully considered by District Judge Henry B. Brown, afterwards Justice of the Supreme Court. This decision was followed in United States v. Bornemann (D. C.) 41 Fed. 751; United States v. Gay (C. C.) 80 Fed. 254.

In Darnborough v. Joseph Benn & Sons, Inc., 187 Fed. 580, 582, 109 C. C. A. 270, 271, it was said in the opinion of the Circuit Court of Appeals for this circuit, construing the act:

"The defendant, therefore, is not charged in the declaration with any violation of section 4 for which a penalty can be recovered, unless, in addition to the charge that *an alien's immigration* has been assisted, encouraged, or solicited, there is also a charge either that *the immigration* was by reason of an offer, solicitation, promise, or agreement to or with him, or that *the immigration* was in order that he might perform labor or service by reason of an offer, solicitation, promise, or agreement to or with him."

I have italicized the words "an alien's immigration" and "the immigration" to emphasize the fact that the words of the statute, "by knowingly assisting, encouraging or soliciting the migration or importation," were taken to refer to an actual and completed migration or importation. This, in my opinion, is the proper construction of the act. The penalty is incurred only when the migration or importation is a completed fact.

Had it been the intent to impose a penalty for assistance, encouragement, or solicitation of a person who did not in fact migrate, or for attempts to induce a person to do what was not in fact done, different phraseology would seem to have been necessary. To assist, encourage, or solicit a person, in order that he may form an intention to migrate, which intention is not carried out, is in substance a different thing from inducing, causing, or assisting to cause an actual importation or migration.

The case of United States v. N. Y. Cent. & H. R. R. R. Co. (D. C.) 232 Fed. 179, takes the contrary view. In that case there was no ac-

tual immigration or importation of any person. While it might be said that the aliens were solicited to immigrate, it could not with precision be said that "the importation or migration of any contract laborer" had been assisted, encouraged, or solicited, for there was no such importation or migration. The learned judge was of the opinion that, in construing the word "solicit," it must be given "its only meaning and that does not include or imply a successful solicitation."

But no one of the words "assist," "encourage," or "solicit," in itself implies success; nor does either word imply nonsuccess. The construction must be sought by reading the text as a whole.

In section 2 (Comp. St. 1916, § 4244), contract laborers are defined as persons—

"who have been induced or solicited to migrate * * * by offers or promise of employment, or in consequence of agreements, oral, written or printed, express or implied, to perform labor in this country of any kind," etc.

In United States v. Craig (C. C.) 28 Fed. 799, it is said:

" * * * We think that if, after having entered into the contract, the alien laborer should refuse to carry it out by migrating, the offense would not be complete, and the action could not be sustained."

This is according to the weight of authority and seems the more reasonable view of the penal provisions of section 5 of the act (Comp. St. 1916, § 4250).

The purpose of the act is exclusion. Section 2 defines the classes of aliens to be excluded by the immigration officers of the United States. When the immigrant appears before them his status as a contract laborer is determined as of that time by an inquiry into the cause of his coming. If, though solicited, he does not attempt to migrate, or if, attempting to migrate, he is stopped at the border as a person not entitled to enter the country, the purpose of the statute, exclusion, is not defeated. Upon the happening of a defined event, however, "the migration or importation of any contract laborer into the United States," the purpose of the statute, exclusion, is defeated; and if this is brought about or contributed to by a defendant he incurs a large penalty—the sum of $1,000, for each contract laborer.

That it was intended to impose so large a penalty for a mere solicitation which was unsuccessful and did not actually result in any attempt to migrate is a conclusion not warranted by the terms or purpose of the act. Nor is it conceivable that it was intended to give to an alien who had been solicited but had not acceded to the solicitation, and had made no attempt to enter the country, a right of action to recover a penalty of $1,000. This, however, would seem to follow from the construction of the statute adopted in United States v. N. Y. Cent. & H. R. R. R. Co. (D. C.) 232 Fed. 179. This results, as it seems to me, from a failure to give due effect to the exact language of the statute, and from the assumption that the mere solicitation of a person is the same as having assisted, encouraged, or solicited an actual event defined by the statute as "the migration or importation of any contract laborer into the United States."

As the statute refers to the event—i. e., the migration—as a thing assisted, encouraged, or solicited, it is not permissible to substitute for

this the solicitation, encouragement, or assistance of a person towards something which always remained in intention, and was not done. The difference is substantial.

Though some of the reasons stated in United States v. Craig (C. C.) 28 Fed. 795, are debatable, I am of the opinion that the construction of the act is right. It is well supported by good authority.

[2] Even were there a fair doubt of the meaning of the statute, the defendant would still be entitled to the benefit of the rule of strict construction which is applicable to this statute, according to the opinion of the Circuit Court of Appeals for this circuit in Darnborough v. Joseph Benn & Sons, 187 Fed. 580, 583, 109 C. C. A. 270.

As my opinion goes to the merits, it is unnecessary to dwell upon other points raised.

Demurrer sustained.