**Randall S. GEE, Plaintiff-Appellee and Cross-Appellant,**

v.

**FEDERAL EXPRESS CORPORATION, et al., Defendants-Appellants and Cross-Appellees.**

**Nos. 81–5892, 81–5899.**

United States Court of Appeals, Sixth Circuit.

Argued April 21, 1983.

Decided June 24, 1983.

Rehearing Denied July 27, 1983.

Louis F. Allen (argued), Louis Jay Miller, Waring, Cox, Sklar, Allen, Chafetz & Watson, Memphis, Tenn., for Federal Exp. Corp.

Jere Fones (argued), J. Heiskell Weatherford, Memphis, Tenn., for Randall S. Gee.

Before MARTIN and CONTIE, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

I

On October 13, 1979, Randall S. Gee was pilot in command of a loaded Federal Express Falcon cargo jet aircraft flying from Memphis, Tennessee, to Erie, Pennsylvania, with intermediate stops in Columbus and Cleveland, Ohio. First Officer Luana Davis was the only other crewmember on board.

In the climbout from the takeoff from Cleveland to cruising altitude to Erie, at approximately 14,000 to 16,000 feet, Cap-

tain Gee turned to Ms. Davis and said: "I want to show you something." He then rolled the aircraft in a full 360° circle. He then leveled off the aircraft, turned to Ms. Davis and said: "I always wanted to do that." He cautioned Ms. Davis that "no one should ever know of this incident" and repeatedly begged her not to reveal his actions because he knew he would be fired if she should report this incident to his superiors.

First Officer Davis described Gee's actions in the following sworn statement:

1. I am Luana Davis, a First Officer (pilot) for Falcon DA–20 jet aircraft with Federal Express Corporation. At all times pertinent to this cause of action and up to this day, I have held an Air Transport Pilot Certificate. I have been employed by Federal Express Corporation since July 9, 1979. The following statements are based on my personal knowledge and are true to the best of my knowledge, information, and belief.

2. On October 13, 1979, I was assigned to serve as First Officer on Falcon Jet No. N36FE. The route of this flight was from Memphis to Columbus, Ohio, to Cleveland, Ohio, to Erie, Pennsylvania. Captain Randall Gee was assigned to serve as pilot-in-command on this flight. We were the only crew members assigned to this flight. Throughout the flight, the aircraft was loaded with cargo.

3. In the middle of our climbout from Cleveland take-off to our cruising altitude to Erie, at approximately 14,000 to 16,000 feet, Captain Gee turned to me and said, "I want to show you something". He then immediately reached above his head to the control panel, turned off all battery and generator switches, returned his right hand to the control column (wheel), and without further comment, rolled the aircraft 360 degrees (a complete circle) to the right. Following this roll, he leveled off the aircraft, turned the battery and generator switches back on, and continued the climb-out. He then turned to me, smiled broadly, and stated, "I always wanted to do that". I reacted with total astonishment and silence for the remainder of the flight. A few moments later, Captain Gee stated to me that "no one should ever learn of this incident". He later repeatedly begged me not to reveal his action and also stated he knew he would be fired if I were to reveal his actions to my superiors.

4. Recognizing my obligation to Federal Express to report this incident and that Captain Gee's aerobatic maneuver was a blatant violation of Federal Aviation Administration regulations, as well as company regulations prohibiting aerobatic or spectacular maneuvers, I reported Captain Gee's misconduct to my immediate superior, Steve Campbell, Assistant Chief Pilot for Falcon DA–20 Aircraft.

Assistant Chief Pilot Stephen A. Campbell, made a sworn statement containing the following:

1. I am Stephen A. Campbell, Assistant Chief Pilot for Falcon DA–20 jet aircraft for Federal Express Corporation. I have been employed at Federal Express Corporation since January, 1974; I have logged approximately 3,500 hours in Falcon DA–20 jet aircraft. The following statements are based on my personal knowledge and are true to the best of my knowledge, information, and belief.

2. Plaintiff, Randall S. Gee ("Gee") was employed as a Falcon DA–20 crewmember (pilot) by Federal Express from 1975 to March 12, 1980. I was Gee's immediate superior at the time of the incident in question.

3. There is no collective bargaining unit for pilots such as Plaintiff in existence at Federal Express Corporation.

4. The employment of Gee was for an indefinite term and was therefore terminable at will by either Gee or Federal Express, with cause or without cause.

5. In Paragraph 5 of the Complaint, Gee makes reference to a "Board of Review" required by his contract of employment with Federal Express Corporation. Apparently, this refers to Sections 1–67 through 1–101 of the Federal Express Corporation Flight Crew Member's Hand-

book, entitled "Flight Operations Board of Review."

6. Section 1-101 provides in part:

Blatant violation of company or departmental rules may constitute misconduct for which an employee may be dismissed without notice or warning.

7. I learned of an incident of blatant violation of company rules committed by Gee on October 13, 1979, through the report of Ms. Luana Davis, a First Officer, and from Clive Seal, Director of Flight on Friday, March 7, 1980.

8. Ms. Davis subsequently furnished to me a written report of the incident in question which revealed that Captain Gee had intentionally and wilfully performed a 360-degree aileron roll with a loaded aircraft for reasons unnecessary for the safe conduct of his flight while acting as pilot-in-command of Federal Express Falcon Jet N36FE on October 13, 1979 during a flight from Cleveland, Ohio to Erie, Pennsylvania. This is an aerobatic maneuver which is extremely dangerous because (1) it could cause structural damage to the aircraft which is not designed for such aerobatics and for the stress of such a roll; (2) it could cause the engines to be deprived of fuel, causing their shutdown, possibly resulting in a loss of control of the aircraft; (3) it could disable the aircraft's hydraulic system, likewise possibly resulting in a loss of control of the aircraft; (4) it exhibits a total disregard for the safety of the aircraft, its cargo, his fellow crew members, and other aircraft in the area. Such a maneuver is in blatant violation of Paragraph 2-9 of the Federal Express Corporation Flight Operations Manual, with which Gee was required to be familiar and to follow, which provides as follows:

Spectacular or aerobatic flight and maneuvering in Federal Express airplanes is forbidden. All maneuvers not necessary to the safe and orderly progress of a flight shall be avoided. Normal flight operations conducted by Federal Express should not require more than a 30 degree angle of bank.

9. In addition, the maneuver was in violation of Paragraph 91.9 of the Federal Aviation Regulations, 14 CFR § 91.9, which provides as follows:

No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another.

10. I met with Gee on Tuesday, March 11, 1980. During this meeting, I informed him of the allegations of Ms. Davis, and in response to them, he admitted he had rolled the aircraft without justification and verified her account of the incident as being true and correct.

11. In light of this blatant violation of company policy, in addition to Federal law, and Gee's admission of guilt, it was decided that Gee should be terminated immediately.

12. Gee was informed verbally of his dismissal by me and this was later confirmed on the same day by a letter of termination delivered to him. This was done in the privacy of my office, with no one else present. I fully realized the gravity of Gee's dismissal from Federal Express, as is the case with any termination of employment, and handed it in as quiet and dignified a fashion as was possible under the circumstances.

On the same day that Campbell notified Gee of his termination, the discharge of Gee was approved by Brian C. Pecon, Senior Vice President, Flight Operations; Arthur C. Bass, President of Federal Express; and Frederick W. Smith, Chairman of the Board and Chief Executive Officer. (See Appendix to this opinion).

II

Gee filed this action on March 3, 1981, against Federal Express and four corporate officials: Frederick Smith, Chief Executive Officer; Brian E. Pecon, Senior Vice President of Flight Operations; Clive Seal, Director of Flight-Chief Pilot; and Steve Campbell, Assistant Chief Pilot for Falcon DA-20 jet aircraft. The complaint asserted that "This action arises under the Fifth and Fourteenth Amendments to the United States Constitution; 42 U.S.C. §§ 1981 et seq.; 45 U.S.C. §§ 151 et seq.; 28 U.S.C.

§§ 1331, 1332, 1342 and the common law." He prayed for actual and punitive damages against all defendants, for an injunction requiring Federal Express to conduct a hearing before a Board of Review, and for reinstatement to his former position with full back pay, plus attorney fees. The district court granted summary judgment in favor of defendants on all issues except one: Gee's claim that he is entitled to a hearing before a Board of Review under the terms of the Flight Crewmembers' Handbook. The court issued a mandatory injunction requiring Federal Express to grant Gee a hearing before a Board of Review. Defendants' appeal from this decision. The district court stayed the mandatory injunction pending appeal. The district court further held that a determination of Gee's damages should await the outcome of the hearing before the Board of Review. Gee cross-appeals from this part of the district court decision.

We conclude that the district court erred in holding that Gee is entitled to a hearing before a Board of Review under the provisions of the Flight Crewmembers' Handbook and in issuing the mandatory injunction. We reverse the decision of the district court on this issue and affirm on all other issues.

### III

Jurisdiction on the issue of interpreting the Flight Crewmembers' Handbook is based upon diversity of citizenship. Tennessee law controls. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Section 1.01 of the Handbook provided as follows: "Blatant violation of company or departmental rules may constitute conduct for which an employee may be dismissed without notice or warning."

Federal Express contends that, under the undisputed record, Gee violated paragraph 2–9 of the Federal Express Flight Operations Manual, which provides as follows:

Spectacular or aerobatic flight and maneuvering in Federal Express Airplanes is

1. The Federal Aviation Administration later suspended Gee's Airline Transport Pilot Certifi-

forbidden. All maneuvers not necessary to the safe and orderly progress of flight shall be avoided. Normal flight operations conducted by Federal Express should not require more than a 30 degree angle of bank.

Federal Express further asserts that Gee's maneuver was in violation of paragraph 91.9 of the Federal Aviation Regulations, 14 C.F.R. § 91.9, which provides: "No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another." [1]

Federal Express contends that Gee's maneuver was a "blatant violation of company or departmental rules" for which he properly was dismissed by the top Federal Express officials.

Gee relies upon §§ 1–67, 1–73, 1–75, and 1–76 of the Handbook:

**1–67 FLIGHT OPERATIONS BOARD OF REVIEW**

**1–68 PURPOSE**

1–69 A Flight Operations Board of Review is a means of reviewing disciplinary cases involving crew-members, thereby assuring that the action taken by an Assistant Chief Pilot (ACP) is appropriate and consistent for the specific circumstances.

**1–70 BOARD MEMBERS**

1–71 The Board will consist of five members, one permanent and four temporary. The permanent member and chairman of the board is the Director of Flight/Chief Pilot (a voting member).

1–72 The crewmember requesting the Board of Review will select the names of three people from the master seniority list to hear the case and be voting members.

1–73 The Director of Flight/Chief Pilot will select the name of one person from the master seniority list to hear the case and be a voting member.

    \*    \*    \*    \*    \*    \*

**1–75 BOARD ACTIVATION**

cate (pilot's license) for a period of 60 days as a result of this incident.

The Board of Review will be activated by the chairman whenever he receives a request from a crewmember to review the disciplinary action taken against him by an Assistant Chief Pilot. A request for a hearing must be received by the Chairman within 24 hours of the receipt of the disciplinary action by the crewmember. Because of the tight time schedule it will be proper that the Chairman of the Review Board receive such notification verbally within 24 hours to be confirmed in writing within 48 hours. Lack of action by the crewmember, or failure to meet the 24 hour deadline, will result in the Assistant Chief Pilot's action as being final and binding.

Gee contends that no matter how blatant his conduct may have been, he cannot be discharged except by action of a Board of Review.

## IV

In interpreting the Handbook we look to guidelines established under the controlling law of Tennessee in this diversity action.

In construing an employment contract, the Supreme Court of Tennessee in *Trabue v. Professional Management-Automotive, Inc.,* 589 S.W.2d 661, 663 (Tenn.1979), speaking through Mr. Justice Harbison, said:

The general rules with regard to contracts of employment are well settled. They are stated in the case of *Little v. Federal Container Corp.,* 61 Tenn.App. 26, 452 S.W.2d 875 (1969) as follows:

"Generally, a contract of employment for an indefinite term is a contract at will and may be terminated by either party. [citations omitted]. Whereas, a contract for a definite term may not be terminated before the end of the term, *except for cause* or by mutual agreement, unless the right to do so is reserved in the contract. 56 C.J.S. Master and Servant § 30, p. 411.

"An employer has the right to discharge an employee at any time for just cause."

\* \* \* \* \* \*

In the earlier case of *Jackson v. The Texas Company,* 10 Tenn.App. 235, 244 (1929), it was held that even where an agency is for a definite term, the principal has a right to revoke it before the expiration of the term without incurring liability for damages because of the failure of the agent faithfully to perform his express or implied undertakings. *See also Moyers v. Graham,* 83 Tenn. 57 (1885).

In *Whittaker v. Care-More, Inc.,* 621 S.W.2d 395 (Tenn.App.1981), involving an action for breach of an employment agreement under an employee handbook, the Court of Appeals of Tennessee held the "employee-at-will" rule is still in effect in Tennessee. The court said: "The rule is that a contract for employment for an indefinite term is a contract at will and can be terminated by either party at any time without cause," citing *Combs v. Standard Oil Co.,* 166 Tenn. 88, 59 S.W.2d 525 (1933), and other cases. The employee handbook in that case provided that "An employee may reasonably expect uninterrupted employment year in and year out. Any employee doing his work in a satisfactory manner and working for the good of the corporation has little to fear about job security." The court held that, in view of the well established law of Tennessee on the "employee-at-will" principle, "the quoted language offers no solace to plaintiff."

We recognize that the "employee-at-will" rule would be inapplicable in Tennessee under an employment contract expressly providing to the contrary. However, the language of the Flight Crewmembers' Handbook providing for a Board of Review must be read in the light of the established State law relating to contracts of employment.

## V

The question to be determined on this appeal is whether the Handbook provision for hearings before a Board of Review is applicable when a pilot is discharged by top Federal Express Officials for a blatant violation; or does § 1–101 control in its provision that "blatant violation of company or

departmental rules may constitute misconduct for which an employee may be dismissed without notice or warning."

We note that the Flight Crewmembers' Handbook on its face is not a collective bargaining agreement negotiated between Federal Express and a union representing its pilots. The record indicates that the Handbook was issued by Federal Express following an election in which a majority of the pilots had voted against a union in an organizational campaign. However, Federal Express concedes in the present case that the Handbook is to be treated as a contract between the company and its pilots. Accordingly, on the present appeal we construe the Handbook as a contract.

The cardinal rule in construing contracts is to ascertain the intention of the parties and to give effect to that intention consistent with legal principles. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.,* 521 S.W.2d 578, 580 (Tenn.1975).

The purpose of the provision for a Board of Review was stated in the 1975 Federal Express Flight Operations Manual as follows: "as a means of reviewing disciplinary or proficiency cases involving Flight Officers, thereby assuring that the action taken by a Flight Manager, Flight Instructor or Check Airman is appropriate and consistent for the specific circumstances."

The 1976 manual described the purpose of a Review Board as "a means of reviewing disciplinary cases involving Flight Officers, thereby assuring that the action taken by a Flight Manager is appropriate and consistent for the specific circumstances." The same language was carried forward in the 1978 Federal Express Flight Crewmembers' Handbook.

The 1980 Handbook, which was in effect at the time of the discharge of Gee, provides that "A Flight Operations Board of Review is a means of reviewing disciplinary cases involving crewmembers, thereby assuring that the action taken by an Assistant Chief Pilot (ACP) is appropriate and consistent for the specific circumstances."

We conclude that the foregoing language supports the position of Federal Express that the provision for a Board of Review

hearing is limited to instances of routine discipline ordered by a pilot's immediate superior, the Assistant Chief Pilot for the type of aircraft to which he is assigned; and that the Board of Review procedure applies to cases of progressive discipline while a crewmember is still employed and on the payroll, and not to cases involving immediate dismissal by higher Federal Express Officials for blatant misconduct of which the pilot admits he was guilty. In the present case the dismissal was approved immediately by the President, the Chairman of the Board (Chief Executive Officer) and the Senior Vice President, Flight Operations, all on the day Gee was notified of his discharge.

It is significant that the district court held that "it was not unreasonable on the part of the defendant Federal Express Corporation to make a determination that the plaintiff's admitted action was or could be deemed to be a 'blatant violation' under the Crewmembers' Handbook."

It also is significant that, if a Board of Review were convened, Randall S. Gee would be entitled to select three of the five members. It is not to be presumed that, in providing for a Board of Review, Federal Express intended to make the decision of corporate management to discharge a pilot for self-confessed blatant misconduct subject to review by a Board whose majority would be selected by the discharged pilot.

One of the rules of construction of contracts is that the interpretation placed thereon by the actions of the parties will be given weight. *Fidelity-Phenix Fire Ins. Co. v. Jackson,* 181 Tenn. 453, 466, 181 S.W.2d 625 (1944). The record is silent as to past interpretations by the parties of the sections of the Crewmember's Handbook under dispute in the present case. We accord weight, however, to the prompt and unanimous actions of top Federal Express officials in discharging Gee when they learned of his admitted blatant violation. This is demonstrated by the Inter-Office Memorandum to All Crewmembers signed by Brian E. Pecon, Senior Vice President, Flight Operations, and the Confidential Communica-

tion signed by Arthur C. Bass, President, and Frederick W. Smith, Chairman of the Board and Chief Executive Officer, both dated March 11, 1980, which are made an Appendix to this opinion.

The provision of the Handbook for discharge without notice or warning for blatant violations is set forth in the last sentence of the last subsection of the rules governing Board of Review procedure. We conclude that this sentence controls over all rules preceding it under the major § 1–67 heading "Flight Operations Board of Review."

Accordingly, the order of the district court granting a mandatory injunction and the holding that Randall S. Gee was entitled to a hearing before a Board of Review are reversed. The decision of the district court refusing to award damages to Gee and the summary judgment in favor of defendants on other issues are affirmed. The cross-appeal of Gee is dismissed. No costs are taxed. The parties will bear their own costs on this appeal.

## APPENDIX

### INTER–OFFICE MEMORANDUM

Date: March 11, 1980
From: B.E. Pecon
Subject: Crewmember Termination
       To: ALL CREWMEMBERS
         cc: F.W. Smith
            A.C. Bass
            J.T. Morse
            J.P. Perkins
            T.E. Sartoian
            C. Seal
            Ass't Chief Pilots

An incident has recently been brought to my attention that has resulted in the immediate termination of a crewmember. This action was taken because of the blatant and intentional violation of both the Federal Aviation Regulations, Part 91.9 pertaining to careless and reckless operation, and our own Flight Operations Manual, Section 2, Paragraph 2–9, dealing with spectacular or aerobatic maneuvers.

Because of the seriousness of the violation, the existence of uncontroverted facts in the incident and the potential ramifications for our company as a result of the violation, I do not believe the crewmember's blatant and intentional violation warrants a Board of Review.

The disregard for safety as well as the obvious violations of rules and regulations fall outside the purview of a Board of Review.

If there are questions about specifics of this action, please feel free to ask your Assistant Chief Pilot, Director of Flight/Chief Pilot or myself.

/s/ BRIAN E. PECON
Brian E. Pecon

BEP/sd

### CONFIDENTIAL
                      March 11, 1980

To:   Brian Pecon
      Senior Vice President
      Flight Operations

Dear Brian:

We have reviewed the circumstances surrounding your termination of Captain Randy Gee and his subsequent request for a Board of Review as well as another case in which a Continental Airlines' Captain performed an aerobatic maneuver aboard a Boeing 727–224, the following points are pertinent.

Since the aerobatic maneuver unquestionably occurred, the only question involved is one of the appropriate degree of disciplinary action. Captain Gee's blatant violation of company operating policy, as well as Federal Aviation Regulations, demonstrates such a total disregard for the public safety, we have concluded that his services as Flight Officer at Federal Express should be terminated and the nature of this violation does not warrant a Board of Review.

We think it important to remember that the Board of Review process provides an individual with protection from capricious actions on the part of his supervisor and is not designed to supplant or supersede the fiduciary responsibility that this corporation and its officers have to the public, its shareholders and its other employees.

Therefore, this case is inappropriate for the Board of Review process.

Regretfully, we must direct you to finalize Captain Gee's termination as quickly as possible without further actions on the part of Federal Express and report the violation to the appropriate FAA authorities.

/s/ ARTHUR C. BASS

Arthur C. Bass

/s/ FREDERICK W. SMITH

Frederick W. Smith